## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CHRIS M. MILLER,

        Petitioner,

v.                           Case No. 8:17-cv-2815-T-60AEP

SECRETARY, DEPARTMENT OF
CORRECTIONS,

        Respondent.

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Miller petitions under 28 U.S.C. § 2254 for the writ of habeas corpus (Docs. 1 and 2) and challenges his state court convictions for kidnapping, aggravated battery, and aggravated assault with a deadly weapon. Upon review of the petition and supporting memorandum (Docs. 1 and 2), the response and supporting exhibits (Docs. 7 and 8), and the reply (Doc. 14), the Court finds as follows:

## Factual and Procedural Background[1]

Miller and his girlfriend had a fight while they were at an outdoor fair together. When they returned home, Miller beat his girlfriend with a stool leg, punched her, and kicked her. During the four-hour attack, Miller threatened to kill the victim with a knife and prevented her from leaving. The victim's body was badly bruised. An emergency room doctor was unable to conclude whether the many bruises on the victim's body were caused by the leg of the stool or a fist. The

---

[1] This summary of the facts derives from the state appellate court's opinion affirming Miller's convictions and sentences and the filings in this case.

doctor opined that, while the victim had not sustained permanent injury, the leg of the stool could have caused serious bodily injury or death.

The jury found Miller guilty, and the trial court sentenced him as a prison releasee reoffender to life for kidnapping, fifteen years for aggravated battery, and five years for aggravated assault.  The state appellate court affirmed in a written opinion and the state supreme court denied discretionary review.  *Miller v. State*, 123 So. 3d 595 (Fla. 2d DCA 2013), *rev. denied*, 139 So. 3d 887 (Fla. 2014). After the post-conviction court denied relief, Miller filed his federal petition. The respondent concedes timeliness and exhaustion.  (Doc. 7 at 10–11, 16–22).

## Legal Standards

### A.    AEDPA

Because Miller filed his petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, AEDPA governs the review of his claims. *Lindh v. Murphy*, 521 U.S. 320, 336–37 (1997).  AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the

> facts in light of the evidence presented in
> the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) interprets this constraint on the power of the federal habeas court to grant a state prisoner's petition:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"[C]learly established Federal law" encompasses the holdings of the Supreme Court at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

"[A]n unreasonable application of federal law is different from an *incorrect* or *erroneous* application of federal law." *Williams*, 529 U.S. at 412 (italics in original). Even clear error is not enough. *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017). A federal habeas petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  "This is 'meant to be' a difficult standard to meet." *LeBlanc*, 137 S. Ct. at 1728 (quoting *Richter*, 562 U.S. at 102).

A factual determination by a state court is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  A federal habeas court may grant relief only if "in light of the evidence presented in the state court proceedings,

no reasonable jurist would agree with the factual determinations upon which the state court decision is based." *Raleigh v. Sec'y, Fla. Dep't Corrs.*, 827 F.3d 938, 948–49 (11th Cir. 2016).  Also, a state court's factual determinations are presumed correct, and a petitioner has the burden of rebutting that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  Consequently, "review under [Section] 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011).  *Accord Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1294–95 (11th Cir. 2015) (applying *Pinholster* to Section 2254(d)(2)).

If the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal court reviews the specific reasons in the opinion and defers to those reasons if reasonable.  *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  If the last state court decision is without reasons, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* at 1192.

**B.   Ineffective Assistance of Counsel**

Miller asserts ineffective assistance of counsel — a difficult claim to sustain.

*Strickland v. Washington*, 466 U.S. 668 (1984) explains:

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment. Second,
> the defendant must show that the deficient performance
> prejudiced the defense. This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

"There is no reason for a court deciding an ineffective assistance of counsel claim

. . . to address both components of the inquiry if the defendant makes an

insufficient showing on one." *Strickland*, 466 U.S. at 697.

"[C]ounsel is strongly presumed to have rendered adequate assistance and

made all significant decisions in the exercise of reasonable professional judgment."

*Strickland*, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim

must judge the reasonableness of counsel's challenged conduct on the facts of the

particular case, viewed as of the time of counsel's conduct." *Id.*  *Strickland* requires

that "in light of all the circumstances, the identified acts or omissions were outside

the wide range of professionally competent assistance." *Id.*

"An error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the

judgment." *Strickland*, 466 U.S. at 691.  To meet this burden the defendant must

show "a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Strickland*, 466 U.S. at 691.

A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690–91. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel does not have a duty to raise a frivolous claim). Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (quoting *Johnson v. Sec'y, Dep't Corrs.*, 643 F.3d 907, 911 (11th Cir. 2011)).

<u>Analysis</u>

<u>**Ground One**</u>

Miller asserts that trial counsel was ineffective for not introducing blood test results showing that the victim was intoxicated at the time of the crimes. (Doc. 1 at 5). Miller contends that the post-conviction court unreasonably applied *Strickland*'s prejudice component. (Doc. 2 at 23–29) The post-conviction court

denied the ground as follows (Doc. 21-1 at 95–99) (state court record citations

omitted):

> Defendant claims that his trial counsel was ineffective for failing to introduce the results of the victim's blood alcohol test or to proffer those results for the record. Defendant further claims that as a result of counsel's deficient performance, the jury was deprived of significant evidence challenging the victim's credibility and her ability to accurately perceive the events which occurred that night. As such, Defendant contends there is at least a reasonable probability that, but for this deficient performance, the outcome would have been different.

> More specifically, Defendant submits that[,] at trial, the victim testified that she drank just two beers the entire day of the incident and split one or two glasses of wine that night with Defendant at the fair, and that she was not at all intoxicated at any time. However, Defendant avers that the victim "was an alcoholic at the time, and she and the Defendant split a full 18-pack of beer that day, had some mixed drinks, and then split a box of wine." He further claims that a blood alcohol test performed at the hospital ten hours after the victim stopped drinking revealed a blood alcohol level of approximately .05. Defendant contends that his trial counsel was aware of the results of the blood alcohol test and of its importance in attacking the victim's credibility and challenging her version of the events. However, as Defendant contends, trial counsel failed to introduce the results or to otherwise proffer those results for the record. Defendant concedes in his motion that counsel attempted to question Dr. Zafari, the emergency room physician who treated the victim that night, about the results of the blood alcohol test and to elicit testimony concerning the victim's .05 blood alcohol level that night. However, Defendant alleges that when the State objected on the basis that Dr. Zafari was not the individual who performed the test, the Court sustained the State's objection to this testimony as hearsay. Defendant claims that thereafter, trial counsel did not proffer the results of the test for the record.

> As there were no eyewitnesses to the incident, Defendant contends that the victim's ability to perceive events and her state of mind and state of sobriety were central to the trial. Thus, Defendant claims counsel's failure to investigate, learn, and call the analyst who performed the test, or to otherwise ensure the introduction of this critical evidence constituted deficient performance. Defendant further claims that had counsel challenged the victim's credibility with the results of

the blood alcohol test, there is a reasonable probability that the outcome of the trial would have been different. The State was directed to respond to this claim.

In its response, the State contends that this claim is refuted by Defendant's own statement at trial that there was no other evidence he wanted admitted at trial and that he was satisfied with his counsel's representation. Additionally, the State contends that Defendant was not prejudiced by the lack of this testimony because defense counsel still demonstrated the victim's confusion over the events that occurred on the night in question and there was otherwise overwhelming evidence for the jury to convict Defendant on his charges.

In Defendant's reply, he contends that the victim's testimony was critical to the jury finding him guilty as charged. Thus, he further contends that had counsel properly introduced the results of the victim's blood alcohol level from the night of the events, this would have contradicted the victim's testimony that she only had a couple of beers and a glass of wine, and was not drunk. Additionally, Defendant contends that this evidence would have reflected on her ability to accurately perceive events and on her credibility and veracity.

The Court finds that although counsel may have been deficient for failing to properly introduce the victim's blood alcohol level, Defendant is unable to show prejudice as required by *Strickland*. More specifically, the Court finds that the jury was not deprived of significant evidence challenging the victim's credibility and her ability to accurately perceive the events which occurred on the night at issue, as Defendant claims. It is undisputed that Defendant beat the victim on the night at issue. The defense's theory, however, was that Defendant did not commit the crimes charged, but rather committed crimes of a lesser degree than the ones charged. Counsel highlighted the fact that the victim had been drinking throughout the day and night of the events, and even suggested in his closing argument that the victim's anxiety medication mixed with alcohol consumption could have caused her confusion regarding her recollection of the events that transpired.

Furthermore, counsel pointed out an extensive number of inconsistencies within the victim's story, thereby greatly challenging the victim's credibility and exposing her confusion over the events which occurred on the night at issue. More specifically, in regards to the kidnapping charge, counsel elicited testimony from the victim that there were multiple exits to the home and that there were multiple phones in the home that she could have used to call for help. Counsel also

suggested that from the victim's story, there was a lot of time where she was by herself, and[ ] suggested that the fact that the victim took a long time to leave the residence and even returned to the bedroom where [Defendant] was showed that the victim was not truly being kept in the home against her will. Additionally, counsel pointed out that when the victim finally left the residence, she did not immediately call the police or wake her friends whose house she parked outside of to tell them that Defendant had kidnapped her, but rather, she attempted to sleep in her car across the street from where Defendant was still sleeping.

In regards to the aggravated battery charge, counsel pointed out that the victim had told multiple officers that Defendant hid the stool leg in the garage, yet at trial she changed her story and indicated that she was the one who hid the stool leg in the garage. Additionally, counsel highlighted the fact that the victim's injuries were consistent with being beaten with Defendant's hands and feet, and that a stool leg may not have been used on the victim. Counsel also pointed out that the victim had previously told one of the officers that she had seen Defendant break the stool leg off despite being in the next room. Counsel pointed out that Defendant's fingerprints were not found on the stool leg; and, that the permanent disfigurement [that] the victim claims was from bolts on the stool leg did not match up to the same distance apart as the bolts on the stool leg.

Finally, in regards to the aggravated assault charge, counsel thoroughly attacked this charge by eliciting witness testimony demonstrat[ing] the victim's confusion. More specifically, counsel cross-examined the victim regarding the size and style of the knife she claimed Defendant held to her, and was able to demonstrate her confusion over those specifics. Counsel also showed that no knife was ever turned over to the police or to the State Attorney's Office, but rather that the victim merely drew a trace outline of the knife. Additionally, counsel demonstrated the victim's confusion regarding the distance where Defendant placed the knife in relation to her throat and also where Defendant placed the knife after holding it up [to] the victim.

In light of the foregoing, the record reflects that counsel was able to thoroughly and adequately attack the victim's credibility and her recollection of the events at issue even without the results of the victim's blood alcohol level. Given the number of inconsistencies defense counsel exposed, [ ] including exploiting the fact that alcohol was consumed by the victim throughout the day and night of the events at issue, the

> Court finds that the record refutes Defendant's claim that
> there is a reasonable probability that the outcome of the trial
> would have been different had counsel properly admitted the
> victim's blood alcohol level into evidence. Defendant fails to
> meet the prejudice prong, and this claim is therefore denied.
> *See Maxwell*, 490 So. 2d at 932 (stating that if the defendant
> fails to satisfy one prong of the analysis, then the inquiry ends,
> and the court need not determine whether the defendant has
> satisfied the other prong).

At trial, the victim admitted that she drank a few beers before the fair and drank wine at the fair. (Doc. 21-1 at 151–53)  In closing argument, trial counsel challenged the victim's ability to perceive the events because she had mixed the alcohol with her anxiety medication.  (*Id*. at 202–03)  Also, trial counsel told the jury that the victim was confused over critical details about the crimes.  (Doc. 21-1 at 97–98)  Trial counsel exposed the victim's confusion over (1) whether she could have left the home or called for help during and after the attack, (2) whether she or Miller hid the stool leg after the crimes, (3) whether or not she saw Miller break the stool leg off of a chair before the crimes, and (4) whether she accurately saw the type and size of the knife that Miller had and how he used it.  (*Id*. at 97–98)  Trial counsel also pointed out that (5) the configuration of the bolts on the stool leg refuted the victim's claim that she had been beaten with the stool leg and (6) police never recovered a knife.  (*Id*. at 97–98)

The blood test results did not directly exculpate Miller and only would have further impeached the victim's credibility.  Fla. Stat. § 90.608(4), (5); *Edwards v. State*, 548 So. 2d 656, 658 (Fla. 1989).  Because trial counsel raised serious doubts about the victim's credibility even without the blood test results, the state court did not unreasonably apply *Strickland*.  *Holsey v. Warden, Ga. Diag. Prison*,

694 F.3d 1230, 1260–61 (11th Cir. 2012) ("[E]vidence presented in postconviction

proceedings is 'cumulative' or 'largely cumulative' to or 'duplicative' of that

presented at trial when it tells a more detailed version of the same story told at

trial or provides more or better examples or amplifies the themes presented to the

jury."); *Rose v. McNeil*, 634 F.3d 1224, 1243 (11th Cir. 2011) ("Obviously,

a petitioner cannot satisfy the prejudice prong of the *Strickland* test with evidence

that is merely cumulative of evidence already presented at trial.").  Ground One is

denied.

## **Ground Two**

Miller asserts that trial counsel was ineffective for not objecting to the trial

prosecutor's comment in closing argument that the jury did not need to

unanimously agree on the elements of aggravated battery.  (Doc. 1 at 7).  Miller

contends that the post-conviction court unreasonably applied *Strickland*'s prejudice

component.  (Doc. 2 at 30–35)  The post-conviction court denied the ground as

follows (Doc. 21-1 at 3–5):

> Defendant claims his trial counsel was ineffective for failing to
> object, correct, or otherwise challenge the State's explanation to
> the jury during closing arguments that they need not reach
> a unanimous verdict. Defendant further claims that but for this
> deficient performance, there is at least a reasonable probability
> that the outcome of the trial would have been different.
>
> . . . .
>
> Defendant's charge of aggravated battery was based on his
> striking the victim while in the kitchen, and was presented
> under both authorized theories set forth in § 784.045(1)(a),
> Florida Statutes: 1) that he used a deadly weapon, *i.e.*, the leg
> of the stool, and 2) that he knowingly inflicted great bodily
> harm, permanent impairment, or disfigurement. As to the
> latter theory, Defendant claims that after the trial court found

there was insufficient evidence to prove great bodily harm or permanent impairment, it granted [judgments of acquittal] as to those theories and left for the jury to determine only whether there was permanent disfigurement. Thus, the jury was permitted to decide that the stool leg was not a deadly weapon or that the victim's injuries did not constitute permanent disfigurement.

However, Defendant claims the State erroneously informed the jurors that they need not all find guilt based on the same theory. Defendant claims the prosecutor made the following improper argument during closing:

> Now, members of the jury, according to that aggravated battery charge, let's say three of you go back and say I don't think she was permanently disfigured, but I do believe that she was beaten with that stool. Even if she was hit once, well, that's aggravated battery with a deadly weapon.

> Well, let's say the other three of you say, you know, I don't think she was hit by a stool, but I do think that scar or that tooth — that's permanently disfigured by him, even if it was just by a fist if you believe that. Well, then your verdict still has to be guilty on aggravated battery because if it's one or the other, you could both come to [ ] different conclusions but reach the same result and that she — that he is guilty of aggravated battery.

Thus, the State explained to the jury that it did not need to reach a unanimous verdict on all of the elements of the charged offense. Defendant claims counsel did not object to this improper argument or otherwise take steps to ensure that the jury was correctly advised that they must have a unanimous finding on one theory or on the other in order to support a guilty verdict on this charge.

This claim is without merit as the Court finds that Defendant fails to establish prejudice. Defendant previously challenged the State's improper argument on direct appeal, asserting that it encouraged a non-unanimous verdict and constituted fundamental error. While the Second [District Court of Appeal] agreed the State's argument was improper and created a risk that the jury's verdict was not unanimous, it determined it [was not] fundamental error because the jury could have reached a lawful verdict under either theory. *See Miller*,

123 So. 3d [at] 595. The Second [District Court of Appeal] further stated:

> Although it is possible that the jury reached a non-unanimous verdict in this case, given the strength of the evidence, it is more likely that the jurors were unanimous on one or both theories. Especially as to the theory that the stool leg was deadly weapon, the evidence seems compelling to this court. Because the jury could easily have reached a lawful verdict in this context under either theory, and indeed under both theories, we conclude that we should not apply the doctrine of fundamental error.

*Id.* Thus, the Second [District Court of Appeal] concluded that the jury could have easily reached a unanimous guilty verdict on at least one, if not both, of the proffered theories. For similar reasons, this Court finds that Defendant is unable to establish prejudice. "A deadly weapon is: any instrument which, when used in the ordinary manner contemplated by its design, will or is likely to cause death or great bodily harm; or any instrument likely to cause great bodily harm because of the way it is used during a crime." *C.A.C. v. State*, 771 So. 2d 1261, 1262 (Fla. 2d DCA 2000). The jury could have easily determined that the stool leg was a deadly weapon based on the way the victim testified that Defendant used it against her. Therefore, there is no reasonable probability that the outcome of the trial would have been different[,] and[ ] Defendant's claim is denied.

The prosecution had to prove that Miller either caused permanent disfigurement or used a deadly weapon. (Doc. 9, Ex. A at 713)  The state court concluded that the jury would have unanimously agreed that Miller used a deadly weapon. (Doc. 21-1 at 5)  The victim testified that Miller hit her with the stool leg at least twenty times on the head and all over her body. (Doc. 9, Ex. A at 267, 270–71, 278–79)  The victim identified in photographs bruises and red marks all over her body that Miller inflicted with the stool leg. (Doc. 9, Ex. A at 315–20, 331–35)  The emergency room doctor who treated the victim opined that the stool leg could have caused serious bodily injury or death. (Doc. 21-1 at 182)  The

victim's testimony, corroborated by the photographs and the emergency room doctor's opinion, proved that the stool leg was a deadly weapon.  *Coronado v. State*, 654 So. 2d 1267, 1269–70 (Fla. 2d DCA 1995); *J.M.C. v. State*, 331 So. 2d 366, 367 (Fla. 3d DCA 1976).

When assessing prejudice under *Strickland*, a court presumes that the jury followed the law.  *Strickland*, 466 U.S. at 695 ("The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision.").  Because the jury would have unanimously agreed that Miller used a deadly weapon to batter the victim and the outcome at trial would not have changed even if trial counsel had objected, the state court did not unreasonably apply *Strickland*.  *Strickland*, 466 U.S. at 694.  *Accord Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("Under our decisions, a criminal defendant alleging prejudice must show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'") (quoting *Strickland*, 466 U.S. at 687); *Pope v. Sec'y, Fla. Dep't Corrs.*, 752 F.3d 1254, 1270 (11th Cir. 2014) ("Pope has not established a reasonable probability that the outcome would have been different if counsel had objected to the prosecutor's remarks, let alone that the [state court's] determination on this point was unreasonable.").

Miller argues that the state court unreasonably applied *Strickland* by concluding the jury "could have" found that Miller used a deadly weapon.  (Doc. 14 at 10)  Miller further argues that the state appellate court on direct appeal

concluded that "it [was] possible that the jury reached a non-unanimous verdict in this case" (Docs. 2 at 34 and 14 at 10–11) and the respondent conceded on federal habeas that trial counsel's deficient performance "'may have created a risk that the jury's verdict was not unanimous.'" (Doc. 14 at 11) (quoting Doc. 7 at 4)  Miller asserts that these statements confirm that the prosecutor's comment was prejudicial.  (Docs. 2 at 34 and 14 at 11)

Under *Strickland*, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.  Rather, Miller had the burden to show a "probability sufficient to undermine confidence in the outcome" of the trial.  *Strickland*, 466 U.S. at 694.  The state court recited the correct standard for prejudice under *Strickland*.  (Doc. 21-1 at 5)  Despite the state court's shorthand reference to what the jury's verdict "could have" determined, the state court did not unreasonably apply *Strickland*.  *Holland v. Jackson*, 542 U.S. 649, 654–55 (2004) ("We have held that such use of the unadorned word 'probably' is permissible shorthand when the complete *Strickland* standard is elsewhere recited.") (citing *Woodford v. Visciotti*, 537 U.S. 19, 23–24 (2002)).  Ground Two is denied.

## **Ground Three**

Miller asserts that trial counsel was ineffective for not objecting to the trial prosecutor's comments in closing argument that the jury could find Miller guilty of kidnapping based on the earlier attack in the kitchen.  (Doc. 1 at 8).  The post-conviction court denied the ground as follows (Doc. 21-1 at 5–6):

. . . Defendant contends trial counsel was deficient for failing to challenge the State's improper argument that the jury could return a less-than-unanimous verdict on the charge of kidnapping. Specifically, Defendant contends that the State advised the jury that Defendant's specific intent for kidnapping could be satisfied through either his intent on the aggravated battery or aggravated assault charges (which occurred prior to the "confinement"), or they could look to acts committed at the same time or after the kidnapping to determine intent.

The crime of kidnapping in this case was based on confining, abducting, or imprisoning another person "with intent to inflict bodily harm upon or to terrorize the victim or another person." *See* Fla. Stat. § 787.01(1)(a)(3). Accordingly, Defendant argues that the statute requires that at the very point in time when the defendant unlawfully confines, abducts, or imprisons, he does so with the intent to inflict bodily harm or to terrorize the victim. *See Johnson v. State*, 969 So. 2d 938, 955 (Fla. 2007) (stating that "[k]idnapping requires proof of both confinement and criminal intent underlying the confinement.")[.] Relying on this analysis, Defendant submits that the aggravated battery and aggravated assault charges had already occurred prior to the confinement amounting to the kidnapping charge. Thus, Defendant contends the intent related to those two charges could not be used to satisfy the specific intent element of the kidnapping charge.

In his motion, Defendant assumes that the confinement began when Defendant grabbed the victim by her arm and pulled her into the bedroom, thus precluding the State from relying on the acts that occurred prior to this time as evidence of intent to inflict bodily harm upon or to terrorize the victim. However, the record does not reflect that the State was limiting the kidnapping charge to acts occurring subsequent to Defendant's pulling of the victim into the bedroom from the curtains.

Defendant further submits that any confinement or movement that occurred during the aggravated battery and aggravated assault acts would have been merely incidental to those crimes. Thus, Defendant contends [that] the State improperly informed the jurors that they could use the intent related to the offenses of aggravated battery and aggravated assault, which occurred separately from and temporally before the kidnapping, to satisfy the specific intent for kidnapping. In support of this contention, Defendant relies on *Conner v. State*, 19 So. 3d 1117 (Fla. 2d DCA 2009). In *Conner*, the defendant was convicted of kidnapping and attempted murder based on his pulling up to the victim at a bus stop, hopping out of his van, and pushing the victim to the ground and strangling her[,] the entire

criminal episode lasting less than a minute. *Id.* at 1119, 1124. The Court in *Conner* stated that "[i]n considering whether conduct involving another crime also amounts to a kidnapping, our supreme court teaches that one must 'closely examine[ ] the facts to determine whether the confinement or movement was incidental to the [other charged crime] or whether it took on an independent significance justifying a kidnapping conviction.'" *Id.* at 1124–25 (citing *Mobley v. State*, 409 So. 2d 1031, 1035 (Fla. 1982)[)]. Accordingly, the Court concluded that Conner's brief act of holding his victim on the ground had no significance independent of the attempted murder, was merely incidental to the choking, and amounted to a mere momentary restraint, insufficient to support a conviction for kidnap[p]ing.

The facts in *Conner* are significantly different than the facts of the present case. Here, the victim was beaten inside of her home over the course of several hours with Defendant's fists, feet, and a wooden stool leg, assaulted with a knife, knocked to the ground, pulled into a bedroom and beaten again, then physically restrained from moving in the bed. Thus, the victim's confinement was not merely incidental to the assault and battery. Rather the victim's confinement to her home by being beaten to the ground with a stool leg and assaulted with a knife took on an independent significance justifying a kidnapping.

Furthermore, Defendant cannot show prejudice. Even if the confinement began at the point in time where Defendant pulled the victim into the bedroom from the curtains, the evidence demonstrates that after that point, Defendant again hit the victim, strangled her, smothered her with a pillow, and reverse bear-hugged her until [she] fell asleep. The jury could have easily reached a unanimous verdict for kidnapping based either on acts related to the aggravated assault and aggravated battery, or on acts occurring after Defendant pulled the victim to the bedroom. As such, the claim is denied.

Whether the acts in the kitchen were relevant to prove intent for kidnapping is an issue of state law, and a state court's determination of state law receives deference in federal court. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal

court sitting in habeas corpus.").  Miller challenged the following comment by the

prosecutor in closing argument (Doc. 9, Ex. A at 629–31):

> This is the victim, and this is what makes this a kidnapping
> and not a false imprisonment. He acted with intent to inflict
> bodily harm upon or to terrorize the victim or another person.
> She used the word "terror." He committed that terror upon her.
> Again, he terrorized her. She said it. Those are her words. He
> hit her with the stool leg, inflict[ed] bodily harm. He hit her
> with his fists. He kicked her. He strangled her. He smothered
> [her]. She had to go to the hospital because of the bruises and
> the cut that the doctor told you about.
>
> He pulverized her. He pulverized her, terrorized. He beat her
> and when she lost control of her bodily functions, did he have
> mercy on her? No. He tells her she can't even take a good
> beating, and then he forces her to clean it up.
>
> He told her he would pop her eye out and not only did he tell
> her that he would pop her eye out, he tried to pop her eye out.
> And the picture she took herself later on after the bruises
> developed even more, you will see a picture of her holding her
> eye down and a red mark from where he tried to pop her eye
> out. He told her he'd punch her teeth out, and he punched her.
> He tried to do it. And one of those teeth that on the date she
> didn't realize was broken, she later found out it had turned
> black and she lost it.
>
> He told her, I'll let you live for now, b*tch. But I promise I will
> kill you. I will let you live for now, but I promise I will kill you.
> He held that knife to her throat. Now, whether it's up against
> her throat or this far from her throat, that's to her throat.
>
> He tried to smother her with a pillow. He tried to strangle her.
> She had to beg for her life. She kept begging for her life, for her
> children. She just kept begging. Terrorized, that's what
> make[s] this a kidnapping and not a false imprisonment.

The victim testified that Miller beat her with his fists, his feet, and the stool

leg and assaulted her with a knife immediately before he physically confined her.

(Doc. 9, Ex. A at 266–82)  When the victim tried to call for help from a window near

the kitchen, Miller pulled the victim into the bedroom where no one could hear her

and continued to beat her.  (Docs. 9, Ex. A at 282–83)  When Miller fell asleep and
the victim tried to leave, Miller woke up, told her, "B*tch, you're not going
anywhere," and beat her some more.  (Doc. 9, Ex. A at 287–88)

The beating and assault before Miller confined the victim were relevant to
show that Miller had the continued intent to terrorize and inflict bodily harm on the
victim after he confined her.  *State v. Wright*, 74 So. 3d 503, 506 (Fla. 2d DCA 2011).
*Accord J.G. v. State*, 915 So. 2d 274, 276 (Fla. 4th DCA 2005) ("It is well-settled that
specific intent is rarely shown by direct evidence and is properly left to the trier of
fact to glean from the surrounding circumstances.").  Miller's confinement of the
victim was not incidental to the aggravated battery and aggravated assault.  *Perry
v. State*, 57 So. 3d 910, 912–13 (Fla. 1st DCA 2011) ("[T]he beating administered by
Appellant lasted at least seven minutes and involved the victim being beaten in one
room, dragged by her hair into another room where the beating continued, and then
dragged by her neck or hair outside where the beating concluded.  These facts are
sufficient to establish confinement . . . .").  Because an objection to the prosecutor's
comment would not have succeeded, the state court did not unreasonably apply
*Strickland.  Meders v. Warden, Ga. Diag. Prison*, 911 F.3d 1335, 1354
(11th Cir. 2019) ("It is not ineffective assistance of counsel to fail to make an
objection that is not due to be sustained.").

Also, in closing argument, the prosecutor argued that the beating and threats
after Miller confined the victim proved that he had the specific intent to terrorize
and inflict bodily harm on the victim.  (Doc. 9, Ex. A at 629–32, 686–89)  Because

these acts after Miller confined the victim proved intent even without the acts before he confined the victim, the state court did not unreasonably apply *Strickland*'s prejudice component.  *Pope*, 752 F.3d at 1270.

Miller argues that the state court unreasonably concluded that the prosecution never limited the kidnapping charge to acts occurring after the beating and assault in the kitchen.  (Doc. 14 at 15)  Miller contends that, at a hearing before trial, the prosecutor advised that the kidnapping occurred after the aggravated assault and aggravated battery in the kitchen.  (Docs. 14 at 12–13, 15 and 14-1 at 9–10)  Miller argues that the prosecutor's comments were contrary to this position.  (Doc. 14 at 12–13, 15)

The information charged Miller with kidnapping the victim "on or between the 13th day and the 14th day of March, . . . two thousand ten."  (Doc. 21-1 at 223)  The information did not allege specific facts or theories for the kidnapping charge.  Fla. R. Crim. P. 3.140(b), (d).  Allegations in the information tracked the language of the kidnapping statute.  (Doc. 21-1 at 223)  The victim told police and testified in her deposition about the threats and violent acts before and after Miller confined her.  (Docs. 2 at 36–37 and 14-1 at 3)  Because Miller was neither surprised by the prosecutor's comments nor hampered in preparing his defense, the comments were not improper.  *Tingley v. State*, 549 So. 2d 649, 651 (Fla. 1989).

Miller also argues that the state court unreasonably applied *Strickland* by concluding that the jury "could easily have" reached a unanimous verdict.  (Doc. 14 at 16)  Miller contends that *Strickland*'s prejudice component requires a reasonable

probability that the outcome would have been different.  (Doc. 14 at 16)  The state

court recited the correct standard for prejudice under *Strickland*.  (Doc. 21-1 at 3)

Despite the state court's shorthand reference to what the jury "could have"

determined, the state court did not unreasonably *Strickland*.  *Jackson*,

542 U.S. at 654–55.  Ground Three is denied.

## Ground Four

Miller asserts that trial counsel was ineffective for not objecting to testimony

by the emergency room doctor that the stool leg was a deadly weapon.  (Doc. 1

at 10).  The post-conviction court denied this ground as follows (Doc. 21-1

at 99–102) (state court record citations omitted):

> Dr. Hisham Zafari, one of the State's expert witnesses, was the
> emergency room doctor who treated the victim. Defendant
> contends that during the State's direct examination of
> Dr. Zafari, the State showed Dr. Zafari the stool leg that the
> victim claimed was used to strike her, and elicited his opinion,
> without objection, that this item was a deadly weapon; that it
> could cause serious bodily injury or death. Defendant further
> contends that the State later highlighted that testimony in its
> closing, informing the jury that expert opinion said the stool leg
> was a deadly weapon.
>
> "A deadly weapon is: [1] any instrument which, when used in
> the ordinary manner contemplated by its design, will or is
> likely to cause death or great bodily harm; or [2] any
> instrument likely to cause great bodily harm because of the
> way it is used during a crime." *C.A.C. v. State*, 771 So. 2d 1261,
> 1262 (Fla. 2d DCA 2000). Because a stool leg is not designed or
> ordinarily used as a weapon for causing death or great bodily
> harm, only the second definition applied in this case.
> Defendant claims that counsel was deficient for failing to object
> to Dr. Zafari's testimony that the stool leg was a deadly weapon
> because there was no predicate for such "expert" testimony.
> Specifically, Defendant contends that Dr. Zafari was not
> provided sufficient facts to render an opinion as to whether the
> stool leg was a deadly weapon. Defendant claims that in order
> for Dr. Zafari to have properly given an expert opinion that the
> stool leg was a deadly weapon, he would have had to have been

provided sufficient facts, such as the manner in which Defendant used the stool leg, the amount of force, and the angle of the blows, in order to render such an opinion.

Additionally, Defendant claims that counsel was deficient for failing to object to this testimony because the State failed to demonstrate whether the expert's opinion was beyond the scope of an ordinary juror's knowledge and understanding, as required by [S]ection 90.702, Florida Statutes. *See Nardone v. State*, 798 So. 2d 870, 873–74 (Fla. 4th DCA 2001) (holding that the admission of police officer's opinion testimony that a metal planter strip used by defendant during the assault was a deadly weapon was not warranted as expert opinion where there was no predicate; *i.e.*, there was no evidence presented as to how defendant used the strip, and there was no showing that such factual determination was not within the realm of ordinary juror's knowledge and understanding); *see also* § 90.702, Fla. Stat. (2015) (providing that before an expert can testify, the subject matter must be beyond the common understanding of the average layman). Therefore, Defendant argues that an appropriate objection would have either been sustained by the trial court or preserved for appeal. Had trial counsel lodged the appropriate objection, Defendant contends that the outcome of the trial would have been different. The State was direct to respond to this claim.

In its response, the State contends that counsel was not ineffective for failing to object to this testimony by Dr. Zafari because the witness was qualified to give such testimony. More specifically, the State indicates that the standard for whether someone can give expert testimony is laid out in Section 90.702 of the Florida Statutes, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion or otherwise, if:

> (1) The testimony is based upon sufficient facts or data;

> (2) The testimony is the product of reliable principles and methods; and

> > (3)    The witness has applied the
> > principles and methods reliably to
> > the facts of the case.

Fla. Stat. § 90.702 (2015). The State argues that at the time of trial, Dr. Zafari had been practicing medicine in an emergency room setting for twenty-six years and had seen an estimated 50,000 patients. The State further argues that Dr. Zafari testified that generally when someone is beaten with a blunt instrument it could cause bodily injury or death. The State contends that after being shown the stool leg, Dr. Zafari further testified that the stool leg could cause serious bodily injury or death. Thus, the State contends that based on Dr. Zafari's knowledge and experience with trauma patients, he was qualified to make such statements and they were necessary because the State had to prove beyond a reasonable doubt that the weapon used by Defendant was "likely to produce death or great bodily harm." Accordingly, the State further contends that counsel was not deficient because any objection by the defense on this issue would have been overruled.

In Defendant's reply, he asserts that he does not dispute whether or not Dr. Zafari was in fact an expert, but rather he contends that it was improper for Dr. Zafari to provide expert testimony on a factual matter falling within the realm of an ordinary juror's knowledge and understanding. He further contends that even if it was a matter appropriate for expert testimony, Dr. Zafari was not provided sufficient facts to render his expert opinion.

Defendant's claim is without merit. The Court finds that Dr. Zafari's testimony regarding the stool leg was properly admitted as expert opinion and that counsel was therefore not deficient. As the State correctly points out, Dr. Zafari was an extremely experienced emergency room doctor with experience in dealing with injuries caused by blunt objects. Thus, Dr. Zafari was qualified as an expert. At trial, the victim provided testimony and a visual demonstration as to how the stool leg was used on her. Additionally, Dr. Zafari testified that he had examined the victim's injuries immediately following her beating by Defendant. Thus, Dr. Zafari was provided sufficient facts from which to render his expert opinion.

Furthermore, the Court rejects Defendant's argument that Dr. Zafari's opinion testimony was within the common understanding of the jury, and finds that because Dr. Zafari had extensive training and experience in trauma injuries, his expert testimony was helpful to the jury. *See McWatters*

> *v. State*, 36 So. 3d 613, 629–31 (Fla. 2010); *see also North
> v. State*, 65 So. 2d 77, 87–88 (Fla. 1952)[,] *aff'd sub nom. North
> v. State of Florida*, 346 U.S. 932, 74 S. Ct. 376, 98 L. Ed. 423
> (1954). Dr. Zafari did not conclusively opine that the victim was
> beaten with the stool leg, rather he opined that [ ] based on his
> experience and training, and on the victim's injuries and the
> manner in which Defendant allegedly used the stool leg, it
> could cause serious bodily injury or death. Dr. Zafari also
> testified that the victim's injuries were equally as consistent
> with being caused by merely hands and feet. Thus, Dr. Zafari's
> testimony was offered to help the jury; however, it was still up
> to the jury to decide whether the victim had in fact been beaten
> by the stool leg, or whether she was beaten by Defendant's
> hands and feet. Any objection by defense counsel on this
> subject would have been overruled. Accordingly, counsel cannot
> be deemed ineffective for failing to raise a meritless objection.
> *See Ferrell v. State*, 29 So. 3d 959, 976 (Fla. 2010) (stating that
> counsel "cannot be deemed ineffective for failing to raise
> a meritless argument[ ]"). As counsel was not deficient and
> Defendant was not prejudiced, this claim is denied.

Whether the testimony by the doctor was admissible is an issue of state law, and a state court's determination of state law receives deference in federal court. Fla. Stat. § 90.702; *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985) ("The federal courts must defer to a state court's interpretation of its own rules of evidence and procedure."). The doctor testified that he was board certified and worked in the emergency room since 1985. (Doc. 21-1 at 176) The doctor treated approximately 50,000 patients during his career. (Doc. 21-1 at 176) The doctor observed the victim's injuries and treated the victim. (Doc. 21-1 at 179–80) The victim told the doctor that someone beat her with the stool leg. (Doc. 21-1 at 179) During trial, the doctor examined the stool leg and opined that the stool leg could cause serious bodily injury or death. (Doc. 21-1 at 182) The doctor was qualified to give that opinion and had specialized knowledge that assisted the jury in understanding the evidence. Fla. Stat. § 90.702; *McWatters*, 36 So. 3d at 629–31.

*Accord* Fla. Stat. § 90.703 ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it includes an ultimate issue to be decided by the trier of fact.").  Because an objection to the testimony would not have succeeded, the state court did not unreasonably apply *Strickland*.  *Meders*, 911 F.3d at 1354.

Miller argues that the state court unreasonably applied *Nardone v. State*, 798 So. 2d 870 (Fla. 4th DCA 2001).  (Doc. 2 at 39–41)  *Nardone* is a state court opinion, and Miller must show that the state court unreasonably applied a Supreme Court opinion.  28 U.S.C. § 2254(d); *Taylor*, 529 U.S. at 412.  Also, in *Nardone*, a police officer opined that an aluminum strip was a "deadly weapon"; in Miller's case, the medical doctor opined that the stool leg could "cause serious bodily injury or death."  (Doc. 21-1 at 182)  *Nardone*, 798 So. 2d at 872.  In *Nardone*, the police officer did not base her opinion on her own observations; in Miller's case, the medical doctor observed and treated the victim's injuries.  *Nardone*, 798 So. 2d at 872.  In *Nardone*, when the prosecution called the police officer to testify, the jury had not heard evidence about how the defendant had used the aluminum strip; in Miller's case, the jury had heard evidence about how Miller had used the stool leg.  *Nardone*, 798 So. 2d at 873–74.  Consequently, the state court unreasonably applied neither *Nardone* nor *Strickland*.  (Doc. 9, Ex. A at 422–45)  Ground Four is denied.

**Ground Five**

Miller asserts that trial counsel was ineffective for not objecting to testimony by the victim about the diagnosis and treatment of her tooth.  (Doc. 1 at 14).  The

post-conviction court denied the claim as follows (Doc. 21-1 at 104–06) (state court

record citations omitted):

> . . . Defendant claims that his trial counsel was ineffective for
> failing to challenge the victim's hearsay testimony. Specifically,
> Defendant claims that the victim repeated numerous hearsay
> statements from her dentist that went directly to a highly
> disputed issue of whether she sustained a permanent injury,
> disability, or disfigurement of her tooth. Defendant challenges
> the following statement:
>
> > [Victim]:   It started throbbing and throbbing.
> >             After a bit I went to the dentist. He
> >             said it was broken.
>
> Defendant next contends that on redirect, the victim testified
> that the dentist told her:
>
> > [Victim]:   You have to go to the endodontist. You
> >             need a root canal. It's a dead tooth.
> >             The tooth is dead. So then I went to an
> >             endodontist and had that surgery
> >             done.
> >
> >             . . .
> >
> >             And I had the procedure done, and
> >             fortunately the guy did a good job. But
> >             I looked at it and I said why is this
> >             stump so black? Is it going to come
> >             back? Is it going to come back normal?
> >
> >             He said, I don't know.
> >
> >             Because my gums are all black and he
> >             said — I said, well, why is it like that?
> >
> >             He said, you received such a
> >             tremendous trauma, such a
> >             tremendous trauma to that tooth, and
> >             that's why it is such a black — it's just
> >             a black stump.
>
> Defendant concedes that after this lengthy recitation of
> hearsay, his trial counsel finally raised an objection, which the
> Court sustained. However, Defendant claims that the harm
> was already done because the hearsay was already before the

jury. Thus, Defendant contends that trial counsel was deficient for failing to request a curative instruction to the jury given that the jury had already heard the inadmissible hearsay.

Defendant further claims that because the declarants of this hearsay were experts in dentistry, the jurors likely attributed added credibility to those opinions that the victim sustained "tremendous trauma" that it "killed" the root and required a root canal. Thus, Defendant claims that had counsel not been deficient in this respect, there is at least a reasonable probability that the outcome of the trial would have been different. The State was directed to respond to this claim.

In its response, the State contends that Defendant was not prejudiced by the victim's testimony relating to the damage to her tooth. First, the State alleges that the victim would have been allowed to testify that after she was beaten, her tooth turned brown and black and ultimately had to be removed. Thus, the State claims that the jury would have heard that her healthy tooth suddenly needed to be removed regardless of any objection by counsel. Second, the State alleges that the absence of any supporting documentation or a dentist as a testifying witness strengthened the defense's theory that the victim was exaggerating her injuries. Lastly, the State contends that the victim suffered additional permanent disfigurement in the form of the marks on her leg made by the screws on the stool leg. Thus, the State claims that [the] jury could have relied on those injuries to find serious bodily injury.

In his reply, Defendant concedes that the victim was permitted to testify about what she observed her tooth doing. However, Defendant points out that the victim's hearsay testimony bolstered her own credibility.

Defendant's claim is without merit. Initially, the Court notes that counsel did in fact object to this testimony on the basis of hearsay. Thus, Defendant claims counsel was deficient for merely failing to request a curative instruction. The Court finds that if the jury had been given a curative instruction, there is not a reasonable probability that it would have returned a different verdict. As the State contends, the victim would have been permitted to testify that her tooth turned brown and black and that she ultimately lost her tooth. Therefore, the only improper testimony was what her dentist and endodontist told her. *See Harris v. State*, 37 So. 3d 285, 286–87 (Fla. 2d DCA 2010) (holding that the victim's testimony as to what he was told at the hospital concerning the extent of his injuries was inadmissible hearsay). Although the hearsay might have served to bolster the victim's testimony regarding

- 27 -

the extent of her injuries, the Court finds that the jury could have easily returned the same verdict even absent the hearsay testimony.

The victim testified that the State's Composite Exhibit 10A–F [was] photographs of her when she was brought to the emergency room, and she pointed out her "broken tooth." Thus, the jury was already aware that the victim suffered a broken tooth following her beating by Defendant. Counsel cross-examined Deputy McDowell regarding what she perceived when she encountered the victim seven days after the incident. Counsel elicited testimony that the tooth did not look chipped or broken and was still intact in the victim's mouth. Additionally, in closing argument, counsel pointed out to the jury that "the only reason we have to believe that something happened to her teeth or to her tooth was her testimony. We didn't hear from a dentist. We didn't see any dental records." Counsel also pointed out that after searching, the victim "finally found a dentist that said [ ] there was something wrong with her tooth. I don't even know if that's true." Therefore, even absent a curative instruction, counsel advised the jury that the victim was in essence bolstering her own testimony without any actual evidence to support such statements.

Moreover, the victim testified that she sustained scarring on her leg from the bolts on the stool leg. She even stood up and showed the jury the marks that were still on her leg from being hit with the stool leg. The jury could have easily found the scars on the victim's leg to be permanent disfigurement; or, also as easily determined that the stool leg was a deadly weapon. Therefore, there is not a reasonable probability that but for counsel's failure to request a curative instruction, the outcome of the trial would have been different. For all of the aforementioned reasons, Defendant was not prejudiced and this claim is denied.

Trial counsel objected to the victim's testimony as hearsay.  (Doc. 21-1 at 174) The trial court sustained the objection but trial counsel did not ask for a curative instruction.  (Doc. 21-1 at 174)  Whether the victim properly testified about her own observations of her tooth is an issue of state law, and a state court's determination

of state law receives deference in federal court.  Fla. Stat. § 90.604; *Machin*,

758 F.2d at 1433.

    The victim identified her broken tooth in photographs taken at the

emergency room.  (Doc. 21-1 at 149–50)  The victim testified, "And I said I've got to

go see a dentist, and it took awhile to get the right one."  (Doc. 21-1 at 172–73)

During closing argument, trial counsel capitalized on both this admission by the

victim and the absence of dental records and testimony by a dentist to raise doubts

that the victim's tooth was broken.  (Doc. 21-1 at 211)  The trial court instructed the

jury (Doc. 9, Ex. A at 718):

> [Court:]    Weighing the evidence, it is up to you to decide
> what evidence is reliable. You should use your
> common sense in deciding which is the best
> evidence and which evidence should not be relied
> upon in considering your verdict. You may find
> some of the evidence not reliable or less reliable
> than other evidence.

Because trial counsel showed the jury why the victim's hearsay statements were

unreliable even without a curative instruction, the state court did not unreasonably

apply *Strickland*.  *Lundberg v. Sec'y, Fla. Dep't Corrs.*, 808 F. App'x 725, 737–38

(11th Cir. 2020); *Johnson v. Sec'y, Dep't Corrs.*, 737 F. App'x 438, 441–42

(11th Cir. 2018).

    Also, the victim testified that she had scars on her leg from the wounds that

Miller inflicted with the stool leg.  (Doc. 21-1 at 174–75)  The victim showed the

scars to the jury.  (Doc. 21-1 at 175)  The scars proved permanent disfigurement

even without the hearsay testimony about the victim's broken tooth.  Because the

outcome at trial would not have been different even if trial counsel had asked for

a curative instruction, the state court did not unreasonably apply *Strickland*.
*Morgan v. United States*, 785 F. App'x 682, 686–87 (11th Cir. 2019); *Austin v. Sec'y,*
*Dep't Corrs.*, 730 F. App'x 760, 764–65 (11th Cir. 2018).

Miller argues that the state court unreasonably applied *Strickland* by
concluding that the jury "could easily have" returned the same verdict.  (Docs. 2
at 43 and 14 at 21–22)  The state court recited the correct standard for prejudice
under *Strickland*.  (Doc. 21-1 at 106)  Despite the state court's shorthand reference
to what the jury "could have" determined, the state court did not unreasonably
*Strickland*.  *Jackson*, 542 U.S. at 654–55.  Ground Five is denied.

## **Ground Six**

Miller asserts that trial counsel was ineffective for not objecting to comments
by the prosecutor during closing argument.  (Doc. 1 at 14)  Miller contends that the
prosecutor shifted the burden of proof ("sub-claim A"), commented on his right to
silence ("sub-claim B"), commented on facts not in evidence ("sub-claim C"), and
inflamed the jury ("sub-claim D").  (Docs. 1 at 14 and 2 at 44–45)

### **Sub-claim A**

Miller asserts that the prosecutor shifted the burden of proof during closing
argument and trial counsel was ineffective for not objecting.  (Doc. 2 at 44–45)  The
post-conviction court denied the claim as follows (Doc. 21-1 at 11–12):

> Defendant alleges that the State improperly shifted the burden
> of proof by advising the jury that their verdict was going to be
> "[their] chance to tell the truth." . . .
>
> Defendant relies on *Gore v. State* in support of his contention
> that this was improper burden-shifting. 719 So. 2d 1197
> (Fla. 1998). In *Gore*, the Florida Supreme Court held that the

prosecutor impermissibly shifted the State's burden of proof during closing argument by stating, "If you believe [defendant's] story, he's not guilty. If you believe [defendant is] lying to you, he's guilty. It's that simple." *Id.* at 1200. The Florida Supreme Court went on to reason that it is error for a prosecutor to make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the [S]tate has proved its case beyond a reasonable doubt. *Id.*

Whereas in *Gore*, the prosecutor explicitly exhorted the jurors to convict the defendant if they disbelieved his testimony, the prosecutor's statement in the present case that the jury's verdict was going to be "your chance to tell us the truth" does not rise to that level. Rather, it appears as though the State was asking the jury to weigh the credibility of the witnesses and their version of the events. As such, the State did not impermissibly shift its burden of proof or invite the jury to convict Defendant for some reason other than that the State has proved its case beyond a reasonable doubt. Accordingly, Defendant was not prejudiced.

Whether the prosecutor's comment shifted the burden of proof is an issue of state law, and a state court's determination of state law receives deference in federal court. *Ford v. Norris*, 364 F.3d 916, 918–19 (8th Cir. 2004) ("In Mr. Ford's case, the Arkansas Supreme Court came to the conclusion that had Mr. Ford's attorney objected to the prosecutor's statements, the objection, as a matter of Arkansas law, would probably have been overruled. . . . [T]he Arkansas Supreme Court was applying Arkansas law to the facts of Mr. Ford's case."). In the beginning of rebuttal closing argument, the prosecutor told the jury (Doc. 9, Ex. A at 681):

> [Prosecutor:]   Now, verdict, what you're going to decide today, guilty or not guilty. Verdict means *veritas [dictum]* which means the truth to speak. What is the truth? It's a chance for you to tell us what is the truth. What happened on that night?

Under state law, the comment did not shift the burden of proof.  *Lucas v. State*,

67 So. 3d 332, 336 (Fla. 4th DCA 2011) ("[T]he prosecutor 'neither insinuated that

[the] defendant needed to prove anything, nor invited the jury to convict the

defendant for a reason other than the State proving [the] defendant's guilt by

evidence beyond a reasonable doubt.'") (quoting *Dunlap v. State*, 21 So. 3d 873, 876

(Fla. 4th DCA 2009)).  Because an objection to the comment would not have

succeeded, the state court did not unreasonably apply *Strickland*.  *Meders*,

911 F.3d at 1354.

### Sub-claim B

Miller asserts that the prosecutor commented on his right to silence during

closing argument and trial counsel was ineffective for not objecting.  (Doc. 1 at 14)

The post-conviction court denied the claim as follows (Doc. 21-1 at 106–07) (state

court record citations omitted):

> Defendant alleges that the State improperly shifted the burden
> of proof by advising the jury that their verdict was going to be
> "[their] chance to tell the truth." Defendant further alleges that
> the State[ ] immediately afterward[ ] commented on
> Defendant's right to remain silent, arguing:
>
> > There are only two people who know what
> > happened in that house. That's [the victim] and
> > the defendant in this case. And [the victim] told
> > you — she took the stand and told you what
> > happened. What defendant told you through
> > [D]eputy Schafer was I know I did something
> > wrong but a first[-]degree felony?
>
> . . . Defendant [ ] claims that these statements by the State
> during closing argument were improper comments on his right
> to remain silent. Defendants in all criminal cases have the
> absolute constitutional right not to incriminate themselves.
> *See* Fla. Const. art. I, §9; U.S. Const. amend. V. An accused
> may invoke this right to remain silent without fear that the

invocation will be used against the accused at trial. *See Green v. State*, 27 So. 3d 731, 735 (Fla. 2d DCA 2010). If a comment made at trial "is fairly susceptible of being construed by the jury as a comment on the defendant's exercise of his or her right to remain silent, it violates the defendant's right to silence." *Id.* The State was directed to respond to this claim.

In its response, the State contends that it was not commenting on Defendant's right to remain silent because, in context, Defendant did not remain silent. The State claims that Defendant made a spontaneous statement to law enforcement, and that the State had a right to argue what Defendant meant by that statement.

In his reply, Defendant reiterates his contention that any comment which is even "fairly susceptible" of being interpreted as a comment on silence will be treated as such.

Defendant's claim is without merit. The Court agrees with the State that taken in context, the statements at issue really comment on the fact that Defendant did not remain silent — that he admitted to doing something wrong to Deputy Schafer — and that Defendant's statements to police undercut the defense's theory that the victim is a woman scorned who planted evidence. Therefore, the Court finds that this comment was not "fairly susceptible" of being interpreted as a comment on silence. For the aforementioned reasons, Defendant cannot demonstrate that counsel was deficient or that he was prejudiced.

Whether the trial prosecutor's comment was "'fairly susceptible' of being interpreted as a comment on silence" is an issue of state law, and a state court's determination of state law receives deference in federal court. *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986) ("In Florida, we have adopted a very liberal rule for determining whether a comment constitutes a comment on silence: any comment which is 'fairly susceptible' of being interpreted as a comment on silence will be treated as such."). At trial, the deputy testified (Doc. 9, Ex. A at 470):

| Deputy: | [Miller] knocked on the window to get my attention. I was, I guess, in a sense babysitting. I was just standing outside the car while Deputy |
|---------|---------|

> McDowell was doing his investigation. He got my
> attention by knocking on the window, and
> I walked up to him and said, "What?"
>
> He says, "Do you know what my charge is?"
>
> I said, "No, I don't."
>
> And he asked, "Well, is it aggravated battery?"
>
> "I don't know."
>
> He said, "Well, I know I did something wrong but
> a first-degree felony," was his question.
>
> I said, "I don't know. I don't have a clue."

Miller's admission was relevant and admissible. Fla. Stat. § 90.803(18); *State v. Binion*, 637 So. 2d 952, 952–53 (Fla. 4th DCA 1994). The prosecutor fairly commented on Miller's admission — not on his failure to testify. *Minnis v. State*, 505 So. 2d 17, 17 (Fla. 3d DCA 1987) ("[The prosecutor] commented on the defendant's oral statement to the arresting police officer, noting that the defendant did not assert an alibi in this statement. This is a perfectly permissible comment on the defendant's statement to the police, and in no sense amounts to a comment on the defendant's exercise of his right to remain silent."). Because an objection would not have succeeded, the state court did not unreasonably apply *Strickland*. *Meders*, 911 F.3d at 1354.

## Sub-claim C

Miller asserts that the prosecutor commented on facts not in evidence four times during closing argument and trial counsel was ineffective for not objecting. (Doc. 2 at 44–45) The post-conviction court denied the claim for each comment as follows.

**Comment One**

> Defendant alleges the prosecutor misrepresented Dr. Zafari's testimony by informing the jury[,] "One blow could have killed her. That's what the doctor said. That's a deadly weapon." However, Defendant claims Dr. Zafari never testified as to the amount of blows with the stool leg that could cause death. Although Dr. Zafari did not specifically comment on the number of blows from a wooden stool leg it would take to cause death, he did indicate that based on his medical experience, the wooden stool leg is an object that could cause serious bodily injury or death. The State was permitted to argue reasonable inferences from the testimony presented at trial. *See Miller v. State*, 926 So. 2d 1243, 1254–55 (Fla. 2006) ("[A]n attorney is allowed to argue reasonable inferences from the evidence."). Thus, Defendant was not prejudiced.

(Doc. 21-1 at 12) (state court record citations omitted)

The doctor opined that the stool leg could cause serious bodily injury or death. (Doc. 21-1 at 46) Whether the prosecutor fairly commented on this testimony is an issue of state law, and a state court's determination of state law receives deference in federal court. *Ford*, 364 F.3d at 918–19. The prosecutor reasonably inferred from the doctor's testimony that one strike with the stool leg could have killed the victim. The jury could have come to the same conclusion based on its own observation of the stool leg. Consequently, the state court did not unreasonably apply *Strickland*'s prejudice component. *Pope*, 752 F.3d at 1270. *Bryant v. State*, 45 Fla. L. Weekly D1954, D1955 (Fla. 1st DCA Aug. 17, 2020) ("Given the evidence presented at trial, the jury could infer that a BB gun can cause great bodily harm, including an injury to a person's eye. Thus, the State's references to the admonition from *A Christmas Story* that a BB gun could 'shoot your eye out' is a logical inference . . . .").

### Comment Two

> . . . Defendant alleges the prosecutor mischaracterized the
> victim's testimony by informing the jurors that Defendant
> "dragged" her to the bedroom from the window, when the
> victim actually testified that Defendant "pulled" her from
> where she was standing at some curtains separating the
> kitchen from the sitting room area. Defendant also alleges that
> contrary to the prosecutor's claim that it was "testified to" that
> the gates in the backyard were "closed by padlock," there was
> in fact no testimony or other evidence to that effect. Several
> times during closing argument, the State correctly stated that
> Defendant "pulled" the victim and substituted the word
> "dragged" for "pulled" just one time. Additionally, although it
> was not "testified to" that the back gate was closed by padlock,
> the victim did testify that the back gate was secured [and]
> locked. She also testified that it would be pretty hard to get out
> that way. The State was permitted to argue reasonable
> inferences from the testimony presented at trial. *See Miller*,
> 926 So. 2d at 1254–55 ("[A]n attorney is allowed to argue
> reasonable inferences from the evidence."). Thus, Defendant
> was not prejudiced.

(Doc. 21-1 at 12–13) (state court record citations omitted)

The victim testified that, during Miller's attack, she tried open the curtains

in the kitchen so that someone outside could see her and help.  (Doc. 9, Ex. A at 282)

Miller "grabbed [her] by the arm" and "pull[ed] [her] into the bedroom that's in the

back of the house where no one [could] hear anything."  (Doc. 9, Ex. A at 282–83)

During closing argument, the prosecutor told the jury several times that Miller

grabbed the victim and pulled her back.  (Doc. 9, Ex. A at 627, 628, 683)  Also, the

prosecutor told the jury that Miller "dragged [the victim] all the way to the back

bedroom where nobody could see her."  (Doc. 9, Ex. A at 686)  The prosecutor

concluded, "[d]ragging [the victim] into another room to beat her is the exact

definition of the intent to terrorize and the intent to confine and the intent to inflict

bodily harm."  (Doc. 9, Ex. A at 689)  Because the prosecutor reasonably inferred

from the victim's testimony that Miller "pulled" or "dragged" the victim, the state court did not unreasonably apply *Strickland*'s prejudice component. *Pope*, 752 F.3d at 1270.

The victim further testified that sliding doors exited to the backyard which was enclosed by a fence and a gate in the backyard was "always secured and locked." (Doc. 21-1 at 37, 38)  The victim acknowledged that the gate was locked from the inside and she could have unlocked the gate to leave.  (Doc. 9, Ex. A at 389–90)  Nonetheless, the victim explained that, because "it would be pretty hard to get out that way," she left through the garage door.  (Doc. 21-1 at 37)  During closing argument, the prosecutor told the jury, "She could have maybe gone out the sliding doors.  Bear in mind in this backyard these gates were closed by padlock. That was testified to." (Doc. 9, Ex. A at 686)  Because the prosecutor reasonably inferred from the victim's testimony that she could have exited the house through the sliding doors but could not have easily unlocked the gate to escape, the state court did not unreasonably apply *Strickland*'s prejudice component.  *Pope*, 752 F.3d at 1270.

### Comment Three

Defendant next challenges the following in the State's closing argument: "Defense counsel said there is no feces in the bedroom. That doesn't matter one way or the other. Whether there [are] no feces in the bedroom does not go to an element of the crime." Defendant claims that this account misrepresented defense counsel's argument and was also a misrepresentation of the law. Specifically, Defendant alleges that defense counsel's argu[ment] [about] the lack of feces in the bedroom went [to] the victim's credibility since she claimed that after she soiled herself, Defendant reverse bear-hugged her in the bed. Defendant further claims the prosecutor misled the jury as to their ability to consider this evidence when assessing the

> victim's credibility by incorrectly advising the jurors that the
> evidence could only be considered if it went to an element of the
> crime. Although the prosecutor pointed out that this evidence
> did not go to an element of the crime, the prosecutor did not
> specifically advise the jurors that the evidence could *only* be
> considered if it went to an element of the crime. Thus,
> Defendant was not prejudiced.

(Doc. 21-1 at 13) (state court record citations omitted)

During closing argument, the prosecutor did not tell the jury that the absence

of feces in the bedroom could only be considered if relevant to an element of a crime.

(Doc. 9, Ex. A at 692)  The prosecutor explained, "What matters is that — why is

there feces.  Because he beat her so severely that she defecated herself."  (Doc. 9,

Ex. A at 692)  The prosecutor replied to trial counsel's argument that the victim

must have been lying that Miller "bear-hugged" her on the bed after she defecated

in the kitchen because the victim never cleaned herself and the bedsheets did not

have feces on them.  (Doc. 9, Ex. A at 648–49)  The trial court instructed the jury to

weigh the evidence by considering whether a witness's testimony agreed with other

evidence in the case.  (Doc. 9, Ex. A at 718)  Because the prosecutor fairly replied to

trial counsel's comment and did not impede the jury from considering the absence of

feces when assessing the victim's credibility, the state court did not unreasonably

apply *Strickland*'s prejudice component.  *Pope*, 752 F.3d at 1270.  *Walls v. State*,

926 So. 2d 1156, 1166 (Fla. 2006).

### **Comment Four**

> . . . Defendant claims the prosecutor misrepresented the
> defense's case by informing the jurors that the defense's theory
> was that the victim was a woman scorned who planted
> evidence and made all of it up. Defendant argues, however,
> that defense counsel never claimed that the victim was making
> all of it up, but that he admitted to the assault and battery,

and that the victim was exaggerating and was untruthful
about the true nature of their altercation. This claim is refuted
by the record. During closing arguments, defense counsel told
the jury that the victim was a jealous woman scorned, who was
a victim, but exaggerated. Thus, the State fairly [and]
accurately summarized defense counsel's theory.

(Doc. 21-1 at 13–14) (state court record citations omitted)

During closing argument, trial counsel told the jury (Doc. 21-1 at 73):

[The victim's] statements are inconsistent. She is
a victim. But it doesn't mean that she can't lie and she
can't exaggerate because what she also admittedly is
a jealous woman scorned, a woman whose boyfriend was
hand feeding, sensually feeding another woman food.

Because trial counsel's comments refuted the claim, the state court did not

unreasonably apply *Strickland*.

### **All Comments**

Furthermore, "[c]losing argument is an opportunity for counsel
to review the evidence and to explicate those inferences which
may reasonably be drawn from the evidence." *See Merck
v. State*, 975 So. 2d 1054, 1061 (Fla. 2007). The parties are
provided wide latitude "so that they may 'advance all
legitimate arguments and draw logical inferences from the
evidence.'" *See Rivera v. State*, 840 So. 2d 284, 286 (Fla. 5th
DCA 2003) (quoting *McArthur v. State*, 801 So. 2d 1037, 1040
(Fla. 5th DCA 2001)). When evaluating a prosecutor's
comments during closing argument, the remarks "should be
reviewed within the context of the closing argument as a whole
and considered cumulatively within the context of the entire
record." *Id.* at 287. Consequently, "a comment standing alone
may be viewed as inappropriate, but when considered within
the context of the entire closing argument and the record, it
may be a fair comment." *Id.*

Prior to closing argument, the Court reminded the jury that
closing argument is not evidence or instruction on the law.
Defense counsel also told the jury that they get to judge the
credibility of the witnesses that testified. Additionally, the
prosecutor specifically told the jury during closing argument,
"Just because counsel says something, whether it's myself,
Ms. Mootmaw, the Defendant — what we say is not evidence.

> It's argument." Thus, Defendant is unable to demonstrate
> prejudice and this claim is therefore denied.

(Doc. 21-1 at 14) (state court record citations omitted)

Because the trial court instructed the jury that "what the attorneys say is not evidence or your instructions on the law" (Doc. 21-1 at 56) and the prosecutor fairly commented on the evidence, the state court did not unreasonably apply *Strickland*. *Strickland*, 466 U.S. at 694 ("In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law."); *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").

### Sub-claim D

Miller asserts that the prosecutor inflamed the jury during closing argument and trial counsel was ineffective for not objecting.  (Doc. 2 at 44–45)  The post-conviction court denied the sub-claim as follows (Doc. 21-1 at 107–10) (state court record citations omitted):

> Defendant claims the prosecutor engaged in inflammatory and
> abusive behavior by "repeatedly and forcefully, with all his
> might, loudly and aggressively" striking his hand with the stool
> leg that was claimed to be used to hit the victim. Defendant
> claims that these actions were designed to evoke an emotional
> response from the jury. Defendant further claims that the
> prosecutor conceded in his closing that he was hitting his hand
> and the air with the stool leg to illustrate to the jurors how
> violent the incident was.
>
> Defendant claims that trial counsel rendered deficient
> performance by failing to object to the prosecutor's
> demonstration. He further claims that this demonstration in
> combination with the above-detailed prosecutorial arguments
> were cumulatively improper. *See Taylor v. State*, 640 So. 2d

1127, 1134–35 (Fla. 1st DCA 1994) (holding that the prosecutor's act of striking a table with the murder weapon and his conjecture concerning the child's dying words were harmful error as they were designed to evoke an emotional response to the crimes or to the defendant, and fell outside the realm of proper argument); *see also Nardone*, 798 So. 2d at 874–75 (cumulative effect of prosecutor's conduct in repeatedly striking the table with the aluminum strip with such force as to send drywall scattering around the courtroom, coupled with improper opinion testimony, was harmful error; however, it was unnecessary to decide whether the prosecutor's demonstration, standing alone, was so egregious as to warrant a new trial); *Ayalavillamizar v. State*, 134 So. 3d 492, 498 (Fla. 4th DCA 2014) (finding that the prosecutor's conduct of repeatedly slamming appellant's hammer down in order to demonstrate the blows to the victim's head was designed to evoke an emotional response to the crime and fell outside the realm of proper argument; however, although improper, it was not so egregious, standing alone, to warrant a new trial). He further claims that but for trial counsel's deficient performance, there is at least a reasonable probability that the outcome of the trial would have been different. The State was direct to respond to this claim.

In its response, the State contends that demonstrations by the State are permitted when, as here, the demonstrative exhibits are relevant to the issues in the case and they constitute an accurate and reasonable reproduction of the object involved. The State argues that the State's demonstration was an accurate reproduction of how the stool leg was used. Additionally, the State contends that Defendant was not prejudiced. More specifically, the State contends that Defendant's claim is not analogous to *Taylor* or *Nardone*. The State alleges that the cause of death was uncontested in *Taylor* and the issue before the jury in that case was whether the defendant was insane at the time, and therefore the demonstration was clearly disturbing and only used to incite the emotions of the jury. The State further alleges that *Taylor* concerned a pattern of prosecutorial misconduct, which included the improper demonstration. The State alleges that *Nardone* similarly involved a pattern of prosecutorial misconduct. Additionally, the State alleges that the demonstration in *Nardone* did not accurately reflect how Defendant used the tool, which was a highly contested issue in the case. In contrast to those cases, the State contends that there was not a pattern of prosecutorial misconduct present in Defendant's trial. The State further contends that here, the State accurately portrayed how Defendant used the stool leg; and, that one of the issues before the jury was whether or not

Defendant beat the victim with the stool leg. The State argues that the present case is more closely akin to, although less severe than, *Ayalavillamizar*[2], *Spriggs*[3], and *Clark*[4], which all held that like demonstrations were harmless error.

> [2] *Ayalavillamizar v. State*, 134 So. 3d 492, 497 (Fla. 4th DCA 2014) (admonishing the State for loudly striking a hammer used by the defendant against the podium, a chair, and a marble surface but finding it did not require a new trial).

> [3] *Spriggs v. State*, 392 So. 2d 9, 10 (Fla. 4th DCA 1980) (admonishing prosecutor for picking up knife admitted into evidence and striking it into jury rail during closing argument, but finding the error harmless).

> [4] *Clark v. State*, 553 So. 2d 240, 242 (Fla. 3d DCA 1989) (finding that prosecutor's conduct in aiming unloaded murder weapon at jury and pulling the trigger was error, but holding the error harmless).

In his reply, Defendant contends that the State's demonstration was more than a mere professional demonstration, that the "prosecutor repeatedly and forcefully, with all his might, loudly and aggressively struck his hand with the stool leg in a manner that resulted in jurors being visibly affected by it."

The Court agrees with the State that Defendant's claim is without merit. First, this Court has already denied Defendant's allegations that the State committed several improper prosecutorial acts. Thus, there was no pattern of prosecutorial misconduct as in *Taylor* and *Nardone*. Second, the prosecutor in Defendant's trial merely repeated the victim's testimony and the victim's demonstration of the beating with the stool leg. Because the jury had already watched the victim demonstrate how Defendant beat her with the stool leg, the Court finds that the prosecutor merely reminded the jury during closing argument of the way that the victim demonstrated her own beating. As such, the prosecutor's demonstration was an accurate portrayal of how Defendant used the stool leg. Third, whether Defendant beat the victim with the stool leg and whether the stool leg constituted a deadly weapon were highly contested issues in this case. Therefore, the actions here were not done solely to evoke an emotional response from the jury and were not so egregious as to undermine the reliability of the jury's verdict. Accordingly, any objection by counsel would have

- 42 -

> been overruled. Consequently, counsel was not deficient for
> failing to raise a meritless argument. For the aforementioned
> reasons, the claim is denied.

Whether the prosecutor's comments during closing argument inflamed the jury is an issue of state law, and a state court's determination of state law receives deference in federal court. *Ford*, 364 F.3d at 918–19. During trial, the victim stood up and showed the jury how Miller held the stool leg and beat her. (Doc. 21-1 at 137) The victim identified the parts of her body that Miller beat with the stool leg. (Doc. 21-1 at 137–39) The victim said that Miller beat her with the stool leg at least twenty times. (Doc. 21-1 at 138) Because the prosecutor accurately portrayed the victim's demonstration and description of the beating, an objection to the prosecutor's comments would not have succeeded. Consequently, the state court did not unreasonably apply *Strickland*. *Meders*, 911 F.3d at 1354. *Brown v. State*, 550 So. 2d 527, 529 (Fla. 1st DCA 1989) ("As to the state's use of the demonstrative exhibits during closing argument, when the prosecutor inserted the knife into the styrofoam head, the record does not establish any alleged inaccuracy of this replication sufficient to demonstrate error."). Ground Six is denied.

## **Ground Seven**

Miller asserts that trial counsel was ineffective for not adequately impeaching the victim. (Doc. 1 at 14) Miller identified inconsistencies between the victim's testimony and physical evidence ("sub-claim A"), inconsistencies between the victim's testimony and other evidence ("sub-claim B"), and inconsistencies between the victim's testimony and prior statements ("sub-claim C"). The post-conviction court denied the claim as follows (Doc. 21-1 at 15–16):

Defendant claims ineffective assistance of counsel for failing to impeach the victim with prior inconsistent statements, and to otherwise ensure that inconsistencies were brought to the jury's attention, which would have weakened her credibility and supported his theory that she exaggerated the allegations. Defendant identifies a host of prior inconsistent statements made by the victim as well as other inconsistencies within the victim's accounts of the events. Defendant claims that the evidence supporting the State's charges on all three counts came solely from the victim's testimony as to what occurred the night of the incident. Therefore, Defendant claims her credibility was a critical issue. Defendant further claims that trial counsel failed to elicit "many substantial inconsistencies" that would have "erased any confidence the jury had in the truthfulness of her version(s) of events." Thus, Defendant claims that because this case hinged on the victim's credibility, there is at least a reasonable probability that the jury would have doubted her story had defense counsel impeached the victim with her prior inconsistent statements, and therefore the outcome of trial would have been different. As Defendant identifies both prior inconsistent statements as well as inconsistencies in general, the Court will individually address each point Defendant makes in his motion.

## Sub-claim A

Miller asserts that trial counsel was ineffective for not impeaching the victim with inconsistencies between her testimony and physical evidence.  The post-conviction court denied the claim for each inconsistency as follows:

Defendant's first "category" of inconsistencies is that the physical evidence does not support even the core of the victim's story. The Court notes that this list does not contain prior inconsistent statements, but rather, examples of where the victim's testimony is incongruent with other evidence. Defendant alleges:

i.      The victim claims she did not hear Defendant enter the house, yet there was only a set of curtains between where the victim was standing in the kitchen and where Defendant supposedly came into the house (through a very loud front door) in a blind rage and ripped off a stool leg. Defense counsel highlighted this inconsistency during closing argument. As such, the jury was

aware of this inconsistency and Defendant was
not prejudiced. Thus, this claim is denied.

ii.   The stool leg was splintered, yet there was no
evidence of shards or splinters of wood anywhere
in the house denoting that Defendant in fact
ripped the stool leg from the stool. During
cross-examination of Deputy McDowell, defense
counsel elicited testimony exposing this
incongruity. As such, the jury was aware of this
inconsistency and Defendant was not prejudiced.
Thus, this claim is denied.

iii.   Despite the victim's testimony that she was
struck a minimum of 30 times with the stool leg
(that had two bolts sticking out of it) to the head,
face, and body, she suffered only bruising and
one small laceration. As testified to by the ER
doctor and the investigating officer, the victim's
injuries were every bit as consistent with being
hit by Defendant's hands and feet alone. Defense
counsel exploited this discrepancy several times
during closing argument. As such, the jury was
aware of this inconsistency and Defendant was
not prejudiced. Thus, this claim is denied.

(Doc. 21-1 at 16–17) (state court record citations omitted)

iv.   The victim testified at trial that the laceration
she received on her head was bleeding and that
she was bleeding all over the house, even
identifying a bloody handprint in the kitchen as
being from her and a sweater that she said was
"full" of her blood. Yet, the pillow with which
Defendant allegedly used to smother the victim
presented no visible or forensic sign of blood. The
State was directed to respond to this claim.

In its response, the State contends that counsel
would not have been able to produce a pillow
that anyone could represent was in the same or
substantially the same condition at the time of
the crime because none of Defendant's or the
victim's belongings were collected by law
enforcement at the time of Defendant's arrest,
and the victim testified that she did laundry and
cleaned up the house once Defendant was
arrested. Furthermore, the State contends that

law enforcement documented extensive bleeding throughout the crime scene and Dr. Zafari noted a laceration on the victim's head at the time that he cared for the victim.

The Court finds that counsel's failure to point out that the victim's pillow did not contain any sign of blood did not impact the reliability of the result in the trial court. As both Defendant and the State indicate, there was extensive evidence demonstrating that the victim had a laceration on her head and that there was a large amount of blood throughout the residence. Pointing out that no blood was found on the pillow would not have diminished the extent of the injuries that the victim received at the hands of Defendant. Furthermore, whether or not the victim was smothered by a pillow was not material to any of the crimes charged. *See Pearce*, 880 So. 2d at 569. For the aforementioned reasons, Defendant was not prejudiced and this claim is denied.

(Doc. 21-1 at 111) (state court record citation omitted)

v.   The victim testified that she soiled herself and was covered in feces; that she and her clothes were "filthy" and "disgusting" with feces. Yet, there was no evidence of feces in the bed or the bedroom at all where Defendant was supposedly holding the victim in a tight bear hug from behind. Defense counsel called attention to this inconsistency on more than one occasion during closing argument. As such, the jury was aware of this inconsistency and Defendant was not prejudiced. Thus, this claim is denied.

vi.   There was no blood on the stool leg. Defense counsel highlighted this incongruity at least twice during closing argument. As such, the jury was aware of this inconsistency and Defendant was not prejudiced. Thus, this claim is denied.

vii.   Additionally, there were no palm prints or fingerprints recovered from the stool leg, and no presence of amino acids on it. (The analyst noted that amino acids come from sweat and blood, and would have been present in significant amounts

had someone held the stool leg in his hand for
hours, physically beating someone else.)
Likewise, defense counsel highlighted this
inconsistency during closing argument. As such,
the jury was aware of this inconsistency and
Defendant was not prejudiced. Thus, this claim is
denied.

viii.   None of the victim's clothing was collected,
despite her claims that they were covered in
blood and bodily fluids. Defense counsel elicited
testimony to this effect from Deputy Jacobs on
cross-examination and then pointed to this fact
during closing argument. As such, the jury was
aware of this inconsistency and Defendant was
not prejudiced. Thus, this claim is denied.

(Doc. 21-1 at 17) (state court record citations omitted)

Trial counsel highlighted the inconsistencies identified by Miller in

sub-claims (A)(i) through (A)(iii) and sub-claims (A)(v) through (A)(viii).  (Doc. 21-1

at 51, 55, 64–66, 70–73, 74, 77–78, 85–87)  Because additional impeachment about

the same inconsistencies would not have changed the outcome at trial, the state

court did not unreasonably apply *Strickland*. *Meders*, 911 F.3d at 1354.

For sub-claim (A)(iv), Miller asserted that trial counsel was ineffective for not

confronting the victim with the absence of blood on a pillow in the bedroom.  The

victim identified in photographs blood on her face, a bloody handprint in the

kitchen, and blood on mattress sheets and a comforter in the bedroom.  (Doc. 9,

Ex. A at 316, 322, 324–26)  Police officers observed blood in the kitchen and the

bedroom and blood on Miller's clothes, fingers, and feet.  (Doc. 9, Ex. A at 469,

486–87, 492–93)  The doctor who treated the victim testified that the victim had

a laceration on her forehead.  (Doc. 9, Ex. A at 426)  Because the absence of blood on

a pillow would not have changed the outcome at trial, the state court did not

unreasonably apply *Strickland*. *Meders*, 911 F.3d at 1354.

### Sub-claim B

Miller asserts that trial counsel was ineffective for not impeaching the victim

with inconsistencies between her testimony and other evidence. The

post-conviction court denied the claim for each inconsistency as follows:

> Defendant's second category of inconsistencies contains the victim's inconsistent statements that the jury heard. This list is not exclusively prior inconsistent statements but also contains further inconsistencies between the victim's testimony and the other evidence. Defendant alleges:
>
> i. The victim told the police who arrived at her house that night that Defendant hid the stool leg in a rolled up carpet in the garage. But at trial, she said that she was the one who hid the stool leg there, to preserve it as evidence for the police. Defense counsel pointed out this variation during cross examination of the victim. Defense counsel again exposed this discrepancy during cross-examination of Deputy McDowell. Furthermore, during closing argument, defense counsel exploited this inconsistency. As such, the jury was aware of this inconsistency and Defendant was not prejudiced. Thus, this claim is denied.
>
> ii. The victim told police who responded to her house that she actually saw Defendant break off the stool leg. Yet, at trial she testified that she did not hear Defendant come into the house or break the stool leg; but, that he just suddenly appeared in the kitchen with the leg in his hand and attacked her. Defense counsel exposed this inconsistency during cross-examination of the victim. Defense counsel also pointed out this inconsistent statement during cross examination of Deputy Stein. As such, the jury was aware of this inconsistency. Thus, Defendant was not prejudiced, and this claim is denied.

   iii. The victim testified at trial that she was told by the ER staff that she suffered a concussion, that she needed stiches for her scalp laceration, and that they wanted to admit her for overnight observation. Yet, the ER doctor testified at trial that the victim was never diagnosed with a concussion, that she was not informed she needed stitches because she did not, and that at no time did he believe she required admission to the hospital or any further observation. While this is not a prior inconsistent statement, defense counsel still exploited this contradiction during closing argument. As such, the jury was aware of this inconsistency and Defendant was not prejudiced. Thus, this claim is denied.

   iv. Defendant did not inform the 911 operator or the police who responded to her house that Defendant threatened her with a knife. Yet, she told the police at the hospital that Defendant used a knife to threaten her. Defense counsel called attention to this discrepancy during closing argument. As such, the jury was aware of this inconsistency and Defendant was not prejudiced. Thus, this claim is denied.

(Doc. 21-1 at 18–19) (state court record citations omitted)

   v. The victim never told Dr. Zafari about a knife or about being smothered by a pillow. The State was directed to respond to this claim.

    Although the State failed to respond to this claim, the Court finds that Defendant was not prejudiced here. First, Defendant did not actually use the knife on the victim so it is reasonable that the victim did not recount this portion of the beating to Dr. Zafari as it would not have assisted him in treating her. Second, being smothered by a pillow, unless until the point of death, would not have left the victim with any injuries that a doctor would need to treat; so, it is again reasonable that the victim did not tell Dr. Zafari about this. Accordingly, the Court finds that the fact that the victim did not tell Dr. Zafari about a knife or about being smothered by a pillow to not be prior inconsistent statements. *See Pearce*, 880 So. 2d at 569 ("To be

inconsistent, a prior statement must either directly contradict or be materially different from the expected testimony at trial. The inconsistency must also involve a material, significant fact rather than mere details."); *State v. Smith*, 573 So. 2d 306, 313 (Fla. 1990) ("Omissions must be of a material, significant fact rather than mere details.").

Additionally, in light of the overwhelming evidence against Defendant that was presented at trial and detailed throughout this order, and considering the numerous inconsistent statements and inconsistencies in evidence that counsel did point out during trial and detailed throughout this order, the Court finds that Defendant was not prejudiced by counsel's failure to point out these two minor inconsistent details. Therefore, this claim is denied.

(Doc. 21-1 at 112)

vi.  When the victim told the police at the hospital that Defendant threatened her with a knife, she could not describe the knife. When pressed by police, she [described] the knife as a "steak knife."  But eight months later, she gave the police a drawing and a photocopy of a large butcher knife.  During cross-examination of the victim, defense counsel exposed this inconsistency at length. Then, defense counsel emphasized this inconsistency during closing argument. As such, the jury was aware of this inconsistency and Defendant was not prejudiced. Thus, this claim is denied.

vii.  The victim testified in her pretrial deposition that Defendant held the knife "to her neck." Yet, at trial she said that he held it about two feet away from her. This claim is directly refuted by the record. At trial, the victim testified that Defendant held the knife up to her throat. Furthermore, even if Defendant were to argue that the victim wavered in her description of this account, defense counsel highlighted possible variations of this detail during closing argument. As such, the jury was aware of the potential

existence of differing accounts, and Defendant was not prejudiced. Thus, this claim is denied.

(Doc. 21-1 at 19) (state court record citations omitted)

viii. The police observed spots of blood in the front entryway to the house. But, in listing all of the rooms she went into that night, the victim did not state that she had been in the front entryway. The State was directed to respond to this claim.

In its response, the State alleges that law enforcement merely testified that they observed what appeared to be blood in the front entryway, but that they had not taken any swabs of the spots believed to be blood. Additionally, the State argues that the victim drew a diagram of where she was in the house, which would be the best evidence for the jury to see how blood might have landed in various places around the house.

Initially, the Court notes that as discussed elsewhere in Ground Six, this is not a prior inconsistent statement. *See Pearce*, 880 So. 2d at 569; *Smith*, 573 So. 2d at 313. Additionally, as the State correctly points out, law enforcement merely testified that they observed what appeared to be blood in the front entryway but that no swabs were taken of the spots believed to be blood; and thus, the Court is not persuaded that there exists a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different. At trial, the State presented a great deal of evidence of Defendant's guilt, and impeaching this portion of the victim's testimony would not have impacted the trial. *Rainey v. State*, 938 So. 2d 632, 635 (Fla. 5th DCA 2006); *see also Hannon v. State*, 941 So. 2d 1109, 1123 (Fla. 2006). As Defendant was not prejudiced, this claim is denied.

(Doc. 21-1 at 112–13) (state court record citations omitted)

ix. Despite saying that she was in mortal fear of immediate death at Defendant's hands, the victim testified that she did not immediately leave the house when he fell asleep. Defense

counsel highlighted this incongruity more than once during closing argument. As such, the jury was aware of this inconsistency and Defendant was not prejudiced. Thus, this claim is denied.

x.      The victim claimed she went back into the bedroom because she needed her cell phone to call police. But, she admitted — and photos taken by police that night demonstrated — that there were phones all over the house, including cell phones. Defense counsel illuminated this disharmony during closing argument. As such, the jury was aware of this inconsistency and Defendant was not prejudiced. Thus, this claim is denied.

xi.     The victim testified at trial that when she returned home from the hospital, she washed the clothes that got dirty from feces and blood that night, including a sweater, two robes, and a night gown. Yet, Pat Oliveira, who helped the victim clean those clothes, testified at trial that they only washed one robe. Defense counsel specifically addressed this conflicting testimony during closing argument. As such, the jury was aware of this inconsistency and Defendant was not prejudiced. Thus, this claim is denied.

xii.    The victim testified that Defendant pushed her into bushes in front of Pat. Yet, Pat made no mention of this in her testimony. Defense counsel emphasized this conflicted testimony twice during closing argument. As such, the jury was aware of this inconsistency and Defendant was not prejudiced. Thus, this claim is denied.

xiii.   The victim claimed to be in mortal fear of immediate death at Defendant's hands. Yet, she drove just two houses down, and tried for about 25 minutes to go to sleep in her car. Defense counsel drew attention to this incongruity during closing argument. As such, the jury was aware of this inconsistency and Defendant was not prejudiced. Thus, this claim is denied.

(Doc. 21-1 at 20) (state court record citations omitted)

Trial counsel highlighted the inconsistencies identified by Miller in sub-claims (B)(i) through (B)(iv), sub-claim (B)(vi), and sub-claims (B)(ix) through (B)(xiii).  (Doc. 21-1 at 22–23, 39–43, 47–48, 52–53, 61–63, 68, 76, 78–81, 83, 86–87)  Because additional impeachment about the same inconsistencies would not have changed the outcome at trial, the state court did not unreasonably apply *Strickland*. *Meders*, 911 F.3d at 1354.

For sub-claim (B)(v), Miller contended that the victim did not tell the doctor that Miller had threatened her with a knife and smothered her with a pillow. Miller asserted that trial counsel was ineffective for not impeaching her with those omissions.  Whether either omission was negative impeachment is an issue of state law, and a state court's determination of state law receives deference in federal court.  Fla. Stat. § 90.608(1); *Machin*, 758 F.2d at 1433.  The victim would not have naturally mentioned to the doctor that Miller threatened her with the knife or smothered her with the pillow because the victim did not suffer physical injury from either.  (Doc. 21-1 at 112)  Consequently, trial counsel was not ineffective and the state court did not unreasonably apply *Strickland*.  *Hawn v. State*, 300 So. 3d 238, 242 (Fla. 4th DCA 2020) ("[A]n omission in a previous out-of-court statement about which the witness testifies at trial can be considered an inconsistent statement for impeachment purposes, if the omission is a material, significant fact rather than mere details and would naturally have been mentioned.") (citation and quotations omitted).

For sub-claim (B)(vii), Miller contended that the victim testified at trial that Miller held a knife two feet from her neck.  Miller asserted that trial counsel was ineffective for not impeaching the victim with her deposition testimony that Miller held the knife "to her neck."  Trial counsel impeached the victim with her prior statement to police that Miller held the knife "to [her] throat."  (Doc. 21-1 at 42)  Because impeachment about the same inconsistency would not have changed the outcome at trial, the state court did not unreasonably apply *Strickland*.  *Meders*, 911 F.3d at 1354.

For sub-claim (B)(viii), Miller contended that the victim never testified that she went into the front entryway of the house.  Miller asserted that trial counsel was ineffective for not impeaching the victim with evidence of blood in the front entryway of the house.  A police officer testified that he observed "a red substance on that [entryway] flooring appearing to be blood" but explained that police never tested the spots for blood.  (Doc. 21-1 at 196–97)  Consequently, the impeachment value of the spots in the entryway was weak.  Because trial counsel impeached the victim with other material, significant facts, the state court did not unreasonably apply *Strickland*.  *Meders*, 911 F.3d at 1354.

## Sub-claim C

Miller asserts that trial counsel was ineffective for not impeaching the victim with additional prior inconsistent statements.  The post-conviction court denied the claim for each inconsistency as follows:

> Defendant's third category of inconsistencies contains the
> victim's inconsistent statements that the jury did not hear.
> As in the second category, this list is not exclusively prior

inconsistent statements but also contains further inconsistencies between the victim's testimony and the other evidence. Defendant alleges:

i.   Defendant claims trial counsel failed to fully articulate a timeline of events and failed to point out that the victim failed to account for at least three hours of missing time in both her account of the events at her deposition and in her account of the events at trial. He further claims that the impression the timelines give is that the victim was beaten for six hours, which, if true, means she would have sustained much more significant injuries than she did. During closing argument, defense counsel commented on the victim's testimony that she was beaten for roughly four hours, yet did not suffer injuries of someone who was beaten for that length of time. Additionally, although defense counsel did not use specific "missing three hours" language, counsel did highlight the fact that she had extra time between when Defendant stopped beating her and when she left the house, enough time to "stage a crime scene." Accordingly, defense counsel was not deficient and Defendant cannot show prejudice. This claim is denied.

ii.  Defendant claims an inconsistency existed between how police described the victim when they responded to the scene and the victim's trial testimony. Specifically, Defendant claims that according to the police, when they responded to the scene, the victim did not have any blood on her hands, arms, or face and that the victim's trial testimony was contradictory to this. This claim is refuted by the record. Deputy McDowell testified that it was dark when he came upon the victim, but that he could see blood around her head area. Accordingly, Defendant cannot show prejudice. This claim is denied.

iii. The victim never provided the police with the knife. But eight months later, she gave the police a drawing and a photocopy of a large butcher knife. On cross-examination of the victim, defense counsel exposed this inconsistency at length. Defense counsel again highlighted this point during closing argument. Accordingly,

defense counsel was not deficient and Defendant was not prejudiced. Thus, this claim is denied.

(Doc. 22-1 at 20–21) (state court record citations omitted)

iv.   Defendant claims the victim made several statements for the first time during her deposition that she had not before informed the police, the hospital, or anyone else of:

1.   That Defendant attempted to "pop" her eyeballs out. The State was directed to respond to this claim.

In its response, the State merely contends that counsel is not required to impeach a witness on every conceivable inconsistency, but that counsel did impeach the victim extensively on issues which could have resulted in a conviction on a lesser included offense. Thus, the State contends that there was no prejudice by counsel's failure to impeach on this issue because Defendant was "clearly guilty" of the lesser-included simple battery, which is the conviction for which sticking a finger in the victim's eye would have supported.

The Court agrees with the State and finds that Defendant cannot demonstrate that counsel's performance was deficient as the statements made by the victim did not rise to the level of inconsistent statements subject to impeachment. *See Pearce*, 880 So. 2d at 569 ("To be inconsistent, a prior statement must either directly contradict or be materially different from the expected testimony at trial. The inconsistency must also involve a material, significant fact rather than mere details."). The Court finds this detail to be immaterial and insignificant, especially in light of all of the other inconsistencies that counsel pointed out during trial and detailed throughout this order. Accordingly, there does not exist a reasonable probability that, but for

- 56 -

counsel's performance, the result of the proceeding would have been different. This claim is therefore denied.

2.    That Defendant busted her tooth. The State was directed to respond to this claim.

In its response, the State argues that the victim testified that it took time for the tooth to die and then additional time for her to discover the cause and have it corrected. Thus, the State contends that there is no evidence to suggest that all of this had occurred by the time of her deposition, which was four months after the incident.

The Court agrees with the State and finds that Defendant was not prejudiced. As the State points out, the victim testified that it took time for the tooth to die and additional time to have it corrected. Accordingly, it is not unreasonable that the victim did not inform anyone that Defendant had busted her tooth until several months later because she did not discover that Defendant had in fact busted her tooth until several months later. As such, the victim or the State could have easily explained this "inconsistency." Therefore, there does not exist a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different. This claim is denied.

(Doc. 21-1 at 113–15) (state court record citations omitted)

3.    That Defendant was violent with her in the bedroom — that he beat her and smothered her and strangled her there. Defense counsel elicited testimony exposing this inconsistency during cross-examination of Deputy McDowell. Defense counsel exposed this inconsistency during closing argument.

Accordingly, Defendant was not
prejudiced; and, this claim is denied.

v.    Defendant claims the victim made several
statements at trial for the first time.

1.    The victim claimed she was "screaming"
for help when at the curtains. This claim
is refuted by the record. At her deposition,
the victim indicated that she was
screaming for help when at the curtains.
Thus, she did not make this allegation for
the first time at trial; and, defense
counsel would have had no grounds to
expose this non-existent inconsistency.
Accordingly, this claim is denied.

(Doc. 21-1 at 22) (state court record citations omitted)

2.    That Defendant kicked her. The State was
directed to respond to this claim.

In its response, the State argues that
defense counsel wanted the jury to believe
that the injuries sustained by the victim
had been caused by Defendant's body and
not by the stool leg. Accordingly, the State
contends that if counsel had pointed this
out, the jury would have had to consider
that Defendant's hands alone caused all of
the victim's injuries, a much less likely
scenario. Thus, the State further contends
that counsel should not be deemed
deficient for failing to point out something
that would have hurt Defendant's theory
of defense.

Again, the Court finds the State's
argument persuasive and therefore finds
that counsel was not ineffective for failing
to impeach the victim with this alleged
inconsistency. The defense theory was
that Defendant used only his body to beat
the victim, and that he did not use the
stool leg. If counsel had pointed this
inconsistency out at trial, it would have
discounted the defense's theory given the
victim's extensive bruising covering the

entirety of her body. Accordingly, there does not exist a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different. This claim is denied.

(Doc. 21-1 at 115) (state court record citations omitted)

3.  That the victim changed into a nightie when she got into the bedroom. Defendant claims this is inconsistent with her testimony that she was pulled into the bedroom and beaten and held down at all times. Also, this is inconsistent with her deposition testimony that she grabbed only a pink robe to put on. During closing argument, defense counsel highlighted the inconsistency between the victim's story that she changed into a nightie and the lack of time for multiple wardrobe changes, as well as being inconsistent with Pat Oliviera's testimony that they only washed one pink robe. As such, Defendant was not prejudiced; and, this claim is therefore denied.

4.  That the victim put on a "different robe" because the first one she put on was filthy. Defendant claims this is inconsistent with her testimony that she was pulled into the bedroom and beaten and held down at all times. Defendant claims that this is also inconsistent with her deposition testimony that she grabbed only a pink robe to put on. During closing argument, defense counsel highlighted the inconsistency between the victim's story that she changed multiple times and the lack of time for multiple wardrobe changes, as well as being inconsistent with Pat Oliviera's testimony that they only washed one pink robe. Thus, Defendant was not prejudiced. Defendant's claim is denied.

5.  That the victim was wearing a sweater and shorts the night of the incident. During closing argument, defense counsel

pointed out that the victim seemed to be changing her story with regard to what she was wearing when she got home. Accordingly, Defendant was not prejudiced. Thus, this claim is denied.

(Doc. 21-1 at 22–23) (state court record citations omitted)

6. That Defendant punched and strangled her while she was in the kitchen. Yet, at her deposition, she failed to mention the strangling in the kitchen and claimed that the punching came after the kitchen incident was over. The State was directed to respond to this claim.

In its response, the State contends that in regards to being punched in the kitchen, Defendant's claim is refuted by the victim's deposition. As far as strangling, the State contends that Defendant was not prejudiced by the lack of this distinction because the victim consistently testified that she was strangled by Defendant at some point, so whether it was in the kitchen or in the bedroom, Defendant was still guilty.

The record reflects that the victim had previously testified to being punched in the kitchen. Thus, counsel was not deficient for failing to point out an inconsistency that did not exist. Additionally, after reviewing the record, it is apparent that the victim never testified — either at her deposition or during trial — to being strangled in the kitchen, as Defendant claims. Rather, the victim consistently testified that she was strangled by Defendant in her bedroom. Thus, counsel was not deficient for pointing out an inconsistency that did not exist. For the aforementioned reasons, this claim is denied.

vi. Defendant claims that the victim told Deputy McDowell that Defendant was already home when she got home from the fair. However,

Defendant claims that in all other accounts, the victim arrived home first. The State was directed to respond to this claim.

In its response, the State contends that the victim could not be impeached with the police affidavit because it is written by law enforcement, not the victim, and is therefore hearsay. Additionally, the State contends that the value of raising this issue during Deputy McDowell's testimony would have been minimal.

Defendant's claim is without merit. Defendant cannot demonstrate that counsel's performance was deficient as the statements made by the victim did not rise to the level of inconsistent statements subject to impeachment. *See Pearce*, 880 So. 2d at 569 ("To be inconsistent, a prior statement must either directly contradict or be materially different from the expected testimony at trial. The inconsistency must also involve a material, significant fact rather than mere details."). The Court notes that in her deposition and at trial, the victim consistently testified that she arrived home first. Although she may have told Deputy McDowell at some point prior to her deposition that Defendant arrived home first, the Court finds that the minor detail of who arrived home first to not be material or significant. In light of the overwhelming evidence against Defendant that was presented at trial and detailed throughout this order, and considering the numerous inconsistent statements and inconsistencies in evidence that counsel did point out during trial and detailed throughout this order, the Court finds that Defendant was not prejudiced by counsel's failure to point out this minor prior inconsistent statement. Therefore, this claim is denied.

vii.   Defendant claims that the victim also told Deputy McDowell that she watched Defendant fall asleep and wake up again "over the course of the next few hours." But, in her deposition and at trial, she testified that he was only asleep for 30 minutes before she left. The State was directed to respond to this claim.

In its response, the State contends that the base timeline in this case was fairly solid with everything else being, admittedly, estimations. The State further argues that the victim explained that she could not see what time it was during the criminal acts. Thus, the State further contends that any inconsistencies in how long Defendant was asleep could easily have been explained with a single question by the State, "Are these times estimates/speculation?" The answer to which, as the State alleges, would have been yes.

The Court agrees with the State that much of the timeline consisted of estimations. The Court further agrees that had counsel pointed out this inconsistency, the State could have easily explained it. Furthermore, the Court notes that the victim did in fact testify at trial that Defendant had fallen asleep, awoken, and then fallen back asleep. Thus, the Court finds that the victim's prior statement to Deputy McDowell did not directly contradict or materially differ from her testimony at trial. *See Pearce*, 880 So. 2d at 569 ("To be inconsistent, a prior statement must either directly contradict or be materially different from the expected testimony at trial. The inconsistency must also involve a material, significant fact rather than mere details."). Accordingly, counsel was not deficient and Defendant was not prejudiced.

viii.   Defendant claims that the victim testified at her deposition that Defendant hit her while she was losing her bowels. However, at trial, Defendant claims that the victim testified that Defendant did not hit her while it was occurring, only after. The State was directed to respond to this claim.

In its response, the State merely contends that pointing out this inconsistency would have been inconsequential.

Defendant's claim is without merit. The victim's prior statement in her deposition did not directly contradict or materially differ from her testimony at trial. *See Pearce*, 880 So. 2d at 569 ("To be inconsistent, a prior statement must either directly contradict or be materially different from

> the expected testimony at trial. The
> inconsistency must also involve a material,
> significant fact rather than mere details.").
> Accordingly, counsel was not deficient and
> Defendant was not prejudiced.

(Doc. 21-1 at 115–18) (state court record citations omitted)

Trial counsel highlighted the inconsistencies in sub-claim (C)(i), sub-claim (C)(iii), sub-claim (C)(iv)(3), and sub-claim (C)(v)(3) through sub-claim (C)(v)(5). (Doc. 21-1 at 40–43, 54, 69–71, 76, 79–81, 83, 87)  Because additional impeachment about the same inconsistencies would not have changed the outcome at trial, the state court did not unreasonably apply *Strickland*.  *Meders*, 911 F.3d at 1354.

For sub-claim (C)(ii), Miller asserted that trial counsel was ineffective for not impeaching the victim with police officers' observations that the victim did not have blood on her hands, arms, or face.  The victim identified photographs showing a bloody handprint in the kitchen, a sweater that she was wearing that was "all full of blood," and blood spots on mattress sheets and a comforter.  (Doc. 9, Ex. A at 324–26)  The doctor who treated the victim testified that the victim had a laceration on her forehead.  (Doc. 9, Ex. A at 426)  A police officer testified that the victim had some blood on her head.  (Doc. 9, Ex. A at 500)   Because the absence of blood on the victim's hands and arms would not have changed the outcome at trial, the state court did not unreasonably apply *Strickland*.  *Meders*, 911 F.3d at 1354.

For sub-claim (C)(iv)(1), Miller contended that the victim testified for the first time at her deposition that Miller tried to "pop" her eyeballs out.  Miller asserted that trial counsel was ineffective for not impeaching the victim with her omission of this detail in her statement to police.  Whether the omission was negative

impeachment is an issue of state law, and a state court's determination of state law receives deference in federal court.  Fla. Stat. § 90.608(1); *Machin*, 758 F.2d at 1433. Because Miller was charged with aggravated battery (Doc. 21-1 at 223, 225) and the victim's testimony about Miller's attempts to "pop" her eyeballs out — an attempted battery — did not concern a material, significant fact, trial counsel was not ineffective and the state court did not unreasonably apply *Strickland*.  *Hawn*, 300 So. 3d at 242.

For sub-claim (C)(iv)(2), Miller contended that the victim testified for the first time at her deposition that Miller busted her tooth.  Miller asserted that trial counsel was ineffective for not impeaching the victim with her omission of this detail in her statement to police.  The victim testified that her tooth started hurting, she found a dentist after several weeks, and her gums turned black after the dentist treated the tooth.  (Doc. 21-1 at 172–74)  Because the victim did not become aware of her injured tooth until weeks after she spoke to police, trial counsel was not ineffective and the state court did not unreasonably apply *Strickland*.

For sub-claim (C)(v)(1), Miller contended that the victim testified for the first time at trial that she screamed for help while she was at the curtains.  Miller asserted that trial counsel was ineffective for not impeaching the victim with her omission of this detail at her deposition.  At her deposition, the victim testified (Doc. 21-1 at 92):

> [Counsel:]     From the kitchen, is there a window that faces
> the street where people are walking?

> [Victim:]     Two tall windows and it's blocked by curtains. So
> I'm trying to open them up while he's coming
> after me, and I'm screaming at the top of my
> lungs, ["]help me[,] help me,["] and praying to
> God someone would hear me. No one heard me.
> . . .

Because this deposition testimony refuted the claim, the state court did not

unreasonably deny the claim.

For sub-claim (C)(v)(2), Miller contended that the victim testified for the first

time at trial that Miller kicked her.  Miller asserted that trial counsel was

ineffective for not impeaching the victim with her omission of this detail in her

statement to police and at her deposition.  Miller was charged with committing

aggravated battery with the stool leg.  (Doc. 21-1 at 223)  At trial, the defense

claimed that Miller used his hands and feet — not the stool leg — to inflict injuries

on the victim.  (Doc. 9, Ex. A at 660)  Because the victim's testimony supported this

defense, trial counsel was not ineffective and the state court did not unreasonably

apply *Strickland*.

For sub-claim (C)(vi), Miller asserted that trial counsel was ineffective for not

impeaching the victim with her statement to police that Miller was already home

when she got back from the fair.  Miller contends that the victim testified at her

deposition and at trial that she arrived home first.  Because who arrived at home

first did not concern a material, significant fact, trial counsel was not ineffective

and the state court did not unreasonably apply *Strickland*.

For sub-claim (C)(vii), Miller asserted that trial counsel was ineffective for

not impeaching the victim with her statement to police that she watched Miller fall

asleep for a few hours and wake up.  Miller contends that the victim testified at her deposition and at trial that Miller was asleep for 30 minutes.  Whether the statement to police was a prior inconsistent statement is an issue of state law, and a state court's determination of state law receives deference in federal court. Fla. Stat. § 90.608(1); *Machin*, 758 F.2d at 1433.  Because the victim testified that Miller "bear-hugged" her, fell asleep, and woke up (Doc. 21-1 at 143–47), the victim's testimony was not materially different from her statement to police and the state court did not unreasonably apply *Strickland*.

For sub-claim (C)(viii), Miller asserted that trial counsel was ineffective for not impeaching the victim with her statement at her deposition that Miller hit her while she defecated.  Miller contends that the victim testified at trial that Miller hit her after she defecated.  Whether the statement at her deposition was a prior inconsistent statement is an issue of state law, and a state court's determination of state law receives deference in federal court.  Fla. Stat. § 90.608(1); *Machin*, 758 F.2d at 1433.  Because when the victim defecated does not concern a material, significant fact, the state court concluded that the statement was not a prior inconsistent statement.  Consequently, trial counsel was not ineffective and the state court did not unreasonably apply *Strickland*.

For sub-claim (C)(v)(6), Miller contended that the victim testified for the first time at trial that Miller punched and strangled her while she was in the kitchen. Miller asserted that trial counsel was ineffective for not impeaching the victim because the victim omitted the detail about the strangling in the kitchen at her

deposition and testified that Miller punched her only after the beating in the

kitchen concluded.  The state court clarified the ruling on the claim on rehearing as

follows (Doc. 21-1 at 234–36) (state court record citations omitted):

> Defendant alleges that at trial, the victim testified that
> Defendant punched and strangled her while she was in
> the kitchen; but, that in her deposition, she made no
> mention at all of a strangling in the kitchen and claimed
> that the punching came after the kitchen incident was
> over. In its response, the State contends that in regards
> to being punched in the kitchen, Defendant's claim is
> refuted by the victim's deposition. As far as strangling,
> the State contends that Defendant was not prejudiced
> by the lack of this distinction because the victim
> consistently testified that she was strangled by
> Defendant at some point, so whether it was in the
> kitchen or in the bedroom, Defendant was still guilty.
>
> The record reflects that the victim had previously
> testified to being punched in the kitchen. Thus, the
> Court finds that counsel was not deficient for failing to
> point out an inconsistency that did not exist. This claim
> is denied to the extent that Defendant claims counsel
> was ineffective for failing to impeach the victim or
> otherwise point out to the jury the victim's inconsistent
> statements relating to when the punching occurred.
>
> As to the victim's inconsistency relating to where
> exactly Defendant strangled her, the Court finds that
> counsel was not deficient for failing to object and
> Defendant was not prejudiced by counsel's failure to
> otherwise point out this inconsistency. First, the Court
> notes that Defendant was neither charged with nor
> convicted of any crimes relating to his strangling of the
> victim in the kitchen, or anywhere else throughout the
> house. Moreover, the defense's theory at trial was that
> Defendant conceded to beating the victim, but was only
> challenging the degree of his beating that occurred
> throughout the night at issue. Thus, the victim's trial
> testimony that Defendant strangled the victim in the
> kitchen was merely a detail, and not a material,
> significant fact.
>
> Second, the Court finds that the victim's failure to
> mention the strangulation in the kitchen at her
> deposition and then the inclusion of such act during

trial to not be direct contradictions of one another, nor to be materially different statements. The victim's deposition testimony as to which acts by Defendant occurred where and in what order are substantially the same as her trial testimony. While the Court agrees with Defendant that [absent from] the victim's deposition is [ ] any mention of her being strangled in the kitchen, the victim did admit during her deposition that everything was happening so fast. Additionally, at trial, the victim mentioned the kitchen strangling almost in passing as she was describing the punching and the eye gouging, which was otherwise consistent with her deposition testimony. Furthermore, the victim testified consistently that Defendant strangled her at some point throughout the night. Thus, the Court finds that Defendant cannot demonstrate that counsel's performance was deficient as the complained of statements made by the victim at her deposition and during trial did not rise to the level of inconsistent statements subject to impeachment. *See Pearce*, 880 So. 2d at 569 ("To be inconsistent, a prior statement must either directly contradict or be materially different from the expected testimony at trial. The inconsistency must also involve a material, significant fact rather than mere details."); *State v. Smith*, 573 So. 2d 306, 313 (Fla. 1990) ("Omissions must be of a material, significant fact rather than mere details.").

Finally, in light of the overwhelming evidence against Defendant that was presented at trial and detailed throughout this Court's prior orders (adopted and incorporated by reference), and considering the numerous inconsistent statements and inconsistencies in evidence that counsel did point out during trial and detailed throughout this Court's prior orders, the Court finds that Defendant was not prejudiced by counsel's failure to point out this minor inconsistency. In other words, Defendant cannot demonstrate that the outcome of the trial would have been different had counsel pointed out this minor inconsistency. At trial, the State presented a great deal of evidence of Defendant's guilt, and pointing out this minor inconsistency from the victim's deposition to her trial testimony would not have impacted the trial. *Rainey v. State*, 938 So. 2d 632, 635 (Fla. 5th DCA 2006); *see also Hannon v. State*, 941 So. 2d 1109, 1123 (Fla. 2006). Because the Court finds that counsel was not deficient and Defendant was not prejudiced, this claim is denied.

At her deposition and at trial, the victim testified that Miller punched her in the kitchen while she was cleaning up her feces and vomit. (Docs. 9, Ex. A at 278–81 and 21-1 at 252)   Because the victim's deposition testimony was not materially different from her trial testimony, trial counsel was not ineffective and the state court did not unreasonably apply *Strickland*.

Whether the omission at her deposition about the strangulation in the kitchen was negative impeachment is an issue of state law, and a state court's determination of state law receives deference in federal court.  Fla. Stat. § 90.608(1); *Machin*, 758 F.2d at 1433.  At her deposition, the victim testified that Miller strangled her with his hands in the bedroom. (Doc. 21-1 at 256–57)  At trial, the victim testified that Miller punched and strangled her in both the kitchen and the bedroom. (Doc. 9, Ex. A at 280, 283–84)

Miller was charged with (1) kidnapping, (2) aggravated battery either with a deadly weapon or by causing great bodily harm or permanent disfigurement, and (3) aggravated assault with a knife. (Doc. 21-1 at 223)  At trial, the defense conceded that Miller beat up the victim but denied that Miller (1) physically confined the victim or (2) used a deadly weapon or caused great bodily injury or permanent disfigurement. (Doc. 9, Ex. A at 223, 655–57, 660–64)  Because where Miller strangled the victim did not concern a material, significant fact, the state court concluded that the omission was not negative impeachment.  Consequently, trial counsel was not ineffective and the state court did not unreasonably apply *Strickland*.

For sub-claim (B)(v), sub-claim (B)(viii), sub-claim (C)(v)(6), and sub-claim (C)(vi), the state court concluded that Miller did not demonstrate prejudice under *Strickland* partly because "overwhelming evidence of guilt" supported the convictions.  (Doc. 21-1 at 112–13, 116–17, 236)  Miller argues that the state court unreasonably determined that "overwhelming evidence of guilt" supported the convictions.  (Docs. 2 at 46–47 and 14 at 24–25)  Because the state court also concluded that Miller did not demonstrate deficient performance for each sub-claim (Doc. 21-1 at 112–13, 116–17, 236) and Miller had the burden to demonstrate both deficient performance and prejudice, Miller is not entitled to relief.  *Strickland*, 466 U.S. at 697.

Also, evidence of Miller's guilt was overwhelming.  Miller conceded that he beat the victim.  (Doc. 9, Ex. A at 223)  The victim testified that Miller repeatedly beat her with a stool leg and his fists and feet, held a knife to her neck and threatened to kill her, pulled her into the bedroom when she tried to escape, and continued to beat her.  (Doc. 9, Ex. A at 266–90)  The jury saw photographs of the victim's injuries taken at the hospital after the attack.  (Doc. 9, Ex. A at 312–20) The jury observed permanent scars on the victim's body caused by the stool leg. (Doc. 9, Ex. A at 409–10)  The doctor who treated the victim substantiated her many injuries and opined that the stool leg could have caused serious bodily injury or death.  (Doc. 9, Ex. A at 425–29)  Miller's conviction was based on both the victim's testimony and this additional unrebutted evidence.  The state court did not

unreasonably determine that evidence of Miller's guilty was overwhelming.  Ground Seven is denied.

**Conclusion**

Because Miller fails to meet his heavy burden under AEDPA, his petition for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk must enter a judgment against Miller and **CLOSE** the case.

### Certificate of Appealability and Leave to Appeal *In Forma Pauperis*

A prisoner seeking a writ of habeas corpus is not absolutely entitled to appeal a district court's denial of his application.  A district court must first issue a certificate of appealability.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  If the district court denies a claim on procedural grounds, a petitioner must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues.  *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).  Because Miller does not meet his burden under Section 2253(c)(2) or *Slack*, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**.  Miller must obtain permission from the court of appeals to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 11th day of December, 2020.

_____

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**